**Fairfax**

IRVIN G. BASKERVILLE

v.

SAUNDERS OIL CO., INC., et al.

No. 0046-85

Argued May 30, 1985

Decided November 6, 1985

COUNSEL

Suzette L. Hutchens (Hutchens & Hutchens, P.C., on briefs), for appellant.

Randolph P. Tabb, Jr. (Taylor, Hazen, Kauffman & Lipscomb, on brief), for appellees.

Opinion

**KOONTZ, C.J.**—This appeal raises the issue whether the act of becoming incarcerated in prison prevents a claimant who has been awarded temporary partial disability from continuing to receive benefits under the Virginia Workers' Compensation Act.

The claimant, Baskerville, sustained a back injury in an industrial accident July 19, 1979. On October 16, 1979, an award was entered based on the claimant 's temporary *total* incapacity. On November 10, 1981, an award was made based on a change in the claimant's average weekly wage, which found the claimant to then be under a condition of temporary *partial* disability. That award remained outstanding at the time this case was most recently before the Commission even though the claimant, by letter of counsel dated April 20, 1984, sought reinstatement of his temporary total incapacity benefits.

The claimant was arrested on drug charges March 6, 1984, and was sentenced on May 25, 1984, to twenty years in the state penitentiary. On May 21, 1984, the employer filed application to terminate or suspend the November 1981, award on the ground of a change in condition. Employer alleged that the claimant had removed himself from the labor market by reason of his incarceration. A hearing was held before a deputy commissioner upon the employer's application seeking termination or suspension of the outstanding award, and upon claimant's letter application alleging temporary total incapacity.

The decision of the deputy commissioner was in favor of the claimant, holding that the victim of an industrial accident cannot remove himself from the labor market (even by being incarcerated in prison) unless he is first available to that market.

Employer appealed to the full Commission and on October 4, 1984, the Commission reversed, finding that the claimant had voluntarily removed himself from the labor market. The Commission reviewed the record and the extensive medical evidence in it and concluded that the claimant remained temporarily *partially* disabled and physically capable of accepting any selective employment opportunity which might arise. Consequently, the Commission ruled that by reason of his incarceration claimant voluntarily removed himself from the labor market and was not entitled to

any compensation. We agree.

■ While there is a conflict in the evidence created primarily by a March 14, 1984, letter of Dr. John W. Ayres, II, we are not authorized to disturb the finding of the Commission if based on credible evidence. *Celanese Fibers Company* v. *Johnson,* ___ Va. ___, 326 S.E.2d 687, 690 (1985). The record contains a report from Dr. John B. Dalton, Jr., on August 10, 1982, which states in part that:

> Quite frankly I cannot from an objective standpoint find any reason why the patient cannot do any type of job he has been assigned to do by the Rehabilitation sources. I think the fact that he has been out of work for this length of time tells of the total lack of motivation in [sic] return to gainful employment.

The Commission noted the lack of evidence in the record to indicate that claimant received any further treatment after 1982.

Dr. Ayres' letter of March 14, 1984, states:

> It is my impression that Mr. Baskerville's chances of returning to gainful employment are nil. His education skills are such that he is capable only of manual jobs and physical capabilities of his back precludes his doing such manual jobs, therefore, I feel it would be virtually impossible to place him in any form of work.

The Commission was not persuaded by this letter. It found that Dr. Ayres' opinion lacked a time reference, was based on the doctor's treatment of the claimant from 1979 to 1982, and that the record revealed no later examination by Dr. Ayres. Our review is limited to the record and we find no evidence there to contradict the Commission's finding on this point.

The claimant contends that the Commission failed to consider his application for a change in status from temporary partial incapacity to temporary total incapacity. We disagree. The Commission noted that, "The claimant, by letter of counsel dated April 20, 1984, sought reinstatement of his temporary total incapacity benefits."

■ Furthermore, the Commission discussed the causal connection, or the lack thereof, between the original injury and the alleged change in claimant's condition that would justify reinstatement of temporary total incapacity status. The Supreme Court has stated that,

> With respect to [an employer's] application, the only question is whether the employee's prior condition of work incapacity has changed; the question of causal connection is not an issue. On the other hand, when an employee files an application for reinstatement of disability benefits, two questions arise: (1) has there been a change in the employee's capacity to work; (2) if so, is the change due to a condition causally connected with the injury originally compensated.

*King's Market* v. *Porter,* 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984).

Clearly, by addressing the question of causal connection the Commission considered, and rejected, the claimant's application for a change in status.

■ We concur with the holding of the deputy commissioner that the victim of an industrial accident cannot remove himself from the labor market unless he has the physical capacity for employment at the time of the removal. Here there was credible evidence that claimant had the physical capacity for selective employment at the time of his incarceration on May 25, 1984. The Virginia Workers' Compensation Act "is based upon the premise that an employer is liable for the condition of an employee resulting from an industrial accident. But an employer is not liable for conditions not causally related to the employee's work." *American Furniture Co.* v. *Doane,* ___ Va. ___, 334 S.E.2d 548 (1985). Claimant's voluntary criminal acts leading to his incarceration, rather than any physical incapacity, removed him from the labor market.

■ It has long been the position of the Industrial Commission that an employee's incarceration constitutes a "change in condition"[1] affecting a claimant's capacity to work. *Welch* v. *Trent*

---

[1] "Change in condition as used in this Act means a change in physical condition of the employee as well as any change in the conditions under which compensation was

*Construction Co.,* 53 O.I.C. 374 (1971). It must be presumed that the legislature has been aware of, and acquiesced in, this position.

> The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change the legislature will be presumed to have acquiesced therein.

*Peyton* v. *Williams,* 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965).

We are in agreement with the Commission's position to the limited extent that it relates to the case of temporary *partial* incapacity. Consequently, due to claimant's change in condition and pursuant to Code §65.1-99, the Commission acted properly in denying compensation during the period of incarceration.

■ Common sense and logic demand a similar result. An employee is compensated for loss of earning power, which is not necessarily proportional to bodily functional disability. *Foust Coal Co.* v. *Messer,* 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954). Loss of earning power due to temporary or permanent *total disability* would not be affected by incarceration. Rather, total disability is affected solely by bodily disability. In the case of temporary *partial disability,* however, incarceration would be the controlling factor in preventing the employee from participating in selective employment or rehabilitative services. Loss of earning power would not, therefore, necessarily derive from any physical disability.

■ We hold that, in the case of temporary *partial* incapacity, when a claimant's incarceration for a criminal act rather than his physical incapacity causes the claimant's loss of earning power, the employer is relieved from paying benefits during the period of incarceration.

We do not reach the argument advanced by the employer that the public policy of Virginia should bar the receipt of benefits

awarded or terminated which would affect the right to, amount of, or duration of compensation." Code 65.1-8.

under the Virginia Workers' Compensation Act by a claimant who becomes incarcerated even where the claimant is under a temporary or permanent *total* disability award. Our holding is limited to the case of temporary *partial* disability when incarceration occurs.

*Affirmed.*

Baker, J., and Keenan, J., concurred.