**Salem**

CRYSTAL OIL COMPANY, INC., et al.

v.

AVERY R. DOTSON

No. 1525-90-3

Decided July 30, 1991

COUNSEL

Timothy W. Gresham (Penn, Stuart, Eskridge & Jones, on brief), for appellant.

Lawrence L. Moise (Vinyard and Moise, on brief), for appellee.

OPINION

**MOON, J.**—Crystal Oil Company, Inc., appellant, seeks reversal of an award to Avery R. Dotson made pursuant to his change in condition application. Appellant alleges that the Industrial Commission erred in (1) permitting an amendment to claimant's change in condition application; (2) permitting the amendment to relate back to the date of the original filing of the application; and (3) in awarding benefits for three days of diagnostic testing.

On August 13, 1986, the claimant, Avery R. Dotson, suffered an injury to his left hip, pelvic area and left leg when a truck rolled against him. The employer, Crystal Oil Company, accepted the injury as compensable and paid temporary total disability and permanent partial disability benefits until April 20, 1989. At a hearing before the commission on June 14, 1989, claimant requested temporary total disability payments, as his permanent partial award had ended April 20, 1989. The employer defended on the grounds that claimant was no longer disabled, could return to pre-injury work status and had failed to market residual work capacity. The deputy commissioner's opinion, dated August 14, 1989, found the claimant was unable to perform pre-injury employment but denied benefits upon the claimant's failure to show that he adequately marketed his residual work capacity.

On October 26, 1989, claimant filed a change in condition application seeking temporary partial disability to begin September 11, 1989. The hearing was held February 22, 1990. At the time of the hearing, claimant sought to amend his original application to include a claim for temporary total disability benefits from July 25, 1989, through September 10, 1989. Counsel for the employer objected to this amendment, stating that he was not prepared to address the issue of temporary total disability for the period of July 25, 1989 through September 10, 1989, and that this time period was not part of the original application. The deputy commissioner held the objection under advisement and continued to hear evidence.

The evidence showed that, at the time of his injury, claimant was earning $567.31 per week and had obtained a new job on September 11, 1989 as a custodian with the Frederick County Public School System earning approximately $251.42 per week. Based upon this discrepancy claimant sought to receive temporary partial disability benefits. The claimant's amended claim seeks temporary total disability benefits from July 25, 1989 through September 10, 1989, a period prior to his new employment.

The record discloses that claimant was hospitalized for three days beginning September 7, 1989 for diagnostic tests related to his injury. Claimant's injury was diagnosed as Meralgia Paresthetica, which is a nerve condition. In the treating physician's opinion, this condition would not affect the claimant's strength and was not considered a disabling injury or one which

would prevent the claimant from performing pre-injury work. Based upon this evidence, the deputy commissioner found "a preponderance of the evidence fails to establish that claimant is partially incapacitated and that he is unable to perform his pre-injury employment." Therefore, the deputy commissioner denied the claimant's application for both partial and total disability. However, the deputy commissioner did award benefits for the three day period claimant was hospitalized for diagnostic tests. By doing so, the deputy commissioner accepted the claimant's amendment to the original application. In his opinion, the deputy commissioner stated:

> We note claimant's application requests no benefits other than temporary partial benefits. No mention is made for any claim for total temporary disability benefits. However, as the question of entitlement to temporary total disability benefits is essentially a medical question, and as the medical record is complete, in order to save the parties the expense of an additional hearing just to determine whether the claimant is entitled to temporary total disability benefits from July 25, 1989, through September 10, 1989, we will allow the amendment and decide that issue.

Upon review, the full commission allowed the amendment, finding "no prejudicial error in this procedure as the employer should have executed a supplemental memorandum of agreement providing compensation for these three days of disability." The commission found that the claimant was entitled to compensation for the three days he was hospitalized for diagnostic testing. The commission found no violation of Rule 13(B), indicating that the October 26, 1989 application for partial disability and the amendment for temporary total disability were "part of the same change in condition."

■ We first address the employer's assertion that the commission has denied it "minimal due process safeguards" by allowing the amendment. Consolidation of claims at the hearing is permissible and in accordance with due process, provided the "employer had notice of the time, location and subject matter of the proceeding which was reasonably calculated to afford the employer an opportunity to be heard." *Sergio's Pizza v. Soncini*, 1 Va. App. 370, 373, 339 S.E.2d 204, 205 (1986).

A similar issue was addressed in *Oak Hill Nursing Home, Inc. v. Back*, 221 Va. 411, 270 S.E.2d 723 (1980), and the principles announced provide guidance to the resolution of this issue. In this case, as in *Oak Hill*, the dispositive issue regarding the consolidation of claims is whether the employer was prejudiced by the commission's consolidation without prior advisement. In *Oak Hill*, the Supreme Court cited *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950), as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance, . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."

221 Va. at 417, 270 S.E.2d at 726 (citations omitted).

The Supreme Court determined that the employer in *Oak Hill* had proper notice, as there was no question that it was the same type of injury involved in both accident reports, that relevant medical reports were in the possession of both the employer and the carrier, that these reports obviously dealt with an existing condition, and that all parties knew that the original claim could, upon a showing of further disability, be reopened within twenty-four months from the date on which compensation had last been paid.

Here, the employer's argument for reversal is less compelling than that made in *Oak Hill*. The employer, both before the deputy commissioner and the full commission, successfully defended the claim of alleged disability. The claimant filed a change in condition application on October 26, 1989. By its very terms, a change in condition "means a change in physical condition of the employee as well as any change in the condition under which compensation was awarded or terminated which would affect the right

to, amount of, or duration of compensation." Code § 65.1-8. The issue of total disability was raised in the prior hearing on June 14 and successfully defended upon the sole ground that the claimant failed to market residual work capacity. The fact that the employer has now received a change in condition application which states on its face that the employee has received a new job makes it difficult to understand how the employer could be surprised by the claimant's contention that he has now remedied his failure to market residual work capacity and is entitled to total disability benefits. Further, the commission only awarded compensation for the three days during which the claimant was hospitalized for diagnostic tests, including EMG, CT scan, MRI and nerve conduction studies, all of which proved normal and supported the employer's assertion that the claimant was no longer unable to return to pre-injury work status. On these facts, we hold that the employer had sufficient notice reasonably calculated under the circumstances to advise it of the pending claim and that it was not prejudiced by the amendment.

Having found that the commission did not abuse its discretion in allowing the amendment, we now address the issue whether the commission properly allowed the amendment to relate back to the time of the original filing. Under Rule 13(B), no benefits may be obtained for a period of more than ninety days preceding the filing of an application. The employer points out that the claimant's application was filed on October 26, 1989, and that it alleged entitlement to temporary partial disability benefits from September 11, 1989, forward. The employer contends that even if the amendment was properly accepted by the commission under Rule 13(B), no benefits should be granted for a period more than ninety days prior to February 22, 1990 (the date of the amendment). The employer contends that allowing the amendment to relate back to the original filing of the change in condition allows the claimant to avoid the application of Rule 13(B).

The purposes of Rule 13(B) have been stated as follows:

> [The rule] encourages prompt application for benefits and provides a basis for early determination of the merits of a claim. Further, it serves to deter dilatory filing of a claim which, if seasonably filed, would permit the employer to act in its best interest to provide the necessary medical attention

to the employee and to ascertain facts which relate to the employee's medical or work status.

* * *

Worker's compensation was intended to "provide compensation to a workman for the loss of his opportunity to engage in work . . . . [when injured in] an accident arising out of and in the course of his employment." Rule 13(B) facilitates the purposes of the Act, encouraging a claimant to obtain compensation as it becomes due. It affords the opportunity for the employer to provide light work or rehabilitation in order to reduce liability, as the employer has the right to do under Code § 65.1-88.

*Whitten v. Mead Paperboard Prods.*, 4 Va. App. 182, 185-86, 355 S.E.2d 349, 350-51 (1987) (citations omitted).

When the claimant filed his change of condition application, he could have claimed compensation for a period of ninety days before filing. This time-frame encompasses the period for which an amendment was allowed. It is implicit in the law and Rule 13(B) that an employer has no way of mitigating its loss for time already lost in that ninety day period. Thus, the purposes of Rule 13(B) were not violated by allowing an amendment to relate back to the time of the filing because, on the date of filing, the employer had all of the information it needed to protect its interest. Rule 13(B) was not intended as a statute of limitation to prevent the assertion of valid claims. It was designed to encourage early filing to further the purpose of the Act: to get compensation and treatment to injured persons. *Id.* The period of recovery sought by the amendment fell well within the ninety day period set by Rule 13(B), as the change in condition application was filed October 26, 1989.

The claimant was awarded full benefits for the three days in which he was hospitalized for diagnostic tests. The employer contends that the claimant was not disabled at the time of the hospitalization, was earning no wages and, therefore, should receive no benefits. *See Great Atl. & Pac. Tea Co. v. Bateman*, 4 Va. App. 459, 359 S.E.2d 98 (1987). "Compensation for loss of earnings due to an injury is governed by Code §§ 65.1-54 and 65.1-55. Benefits under these sections for total and partial incapacity com-

pensate the employee for loss of earnings resulting from the injury." *Id.* at 461, 359 S.E.2d at 99. We find that the claimant's wage loss was not produced by physical incapacity. *See Rier v. Bradlees*, 65 O.I.C. 211 (1986). We conclude, as did the commission, that a preponderance of the evidence shows that the claimant was no longer physically unable to return to pre-injury employment as of the date of his hospitalization and that he voluntarily removed himself from the labor market. *See, e.g., Tessitore v. John A. Volpe Constr. Co.*, 51 O.I.C. 266 (1969); *Wells v. Old Dominion Stevedoring Corp.*, 53 O.I.C. 376 (1971); *Rier v. Bradlees*, 65 O.I.C. 211 (1986). We recognize that "the victim of an industrial accident cannot remove himself from the labor market unless he has physical capacity for employment at the time of the removal. Here, there was credible evidence [as found by the deputy commissioner and affirmed by the full commission] that the claimant had the physical capacity for" employment and was not entitled to disability benefits. *Baskerville v. Saunders Oil Co.*, 1 Va. App. 188, 192, 336 S.E.2d 512, 514 (1985).

■ The claimant contends that he is entitled to benefits because his prior award had been terminated upon the finding that he failed to adequately market his residual work capacity. The claimant asserts that while hospitalized, he was unable to make efforts to market his residual capacity. The claimant is seeking a review based on a change in condition and bears the burden of establishing his entitlement to benefits. *See J.A. Jones Constr. Co. v. Martin*, 198 Va. 370, 373, 94 S.E.2d 202, 204 (1956). When an employee "is able to carry out all of the duties of his pre-injury employment he is not entitled to compensation for wage loss." *Prescott v. Contractors Group, Inc.*, 65 O.I.C. 205, 208 (1986).

■ This is not a case where a claimant currently employed and earning wages undergoes medical testing and is not found to be disabled. Clearly, had the employee been receiving a wage and undergone diagnostic testing for evaluation purposes at the employer's request, he would be entitled to benefits as he would have lost wages as a result of the testing, even if he was not disabled. *Moore v. Clinchfield Coal Co.*, 63 O.I.C. 237 (1984). Likewise, this is not a case where an employee is currently receiving an award for total disability. *Cf. Baskerville*, 1 Va. App. at 193, 336 S.E.2d at 514 (claimant's voluntary act resulting in incarceration would not affect an award based on total disability). *But see Jones*

*v. D & F Plumbing, Heating & Repair*, 67 O.I.C. 220 (1988) (claimant who underwent surgery for work related injury, while incarcerated, was not entitled to total disability benefits). We merely hold that where a claimant's benefits have been terminated for failure to market work capacity and the claimant's subsequent hospitalization for diagnostic tests to determine if he is disabled fails to establish disability, the claimant is not entitled to disability benefits for the time spent undergoing diagnostic tests.

Total disability benefits are designed to compensate a claimant for injury to earning capacity. The claimant failed to carry his burden of establishing a disability constituting an injury to his earning capacity. While it is true that the claimant is unable to work or attempt to market work capacity while undergoing diagnostic tests, we find that at the time of hospitalization, the claimant had voluntarily removed himself from the labor market and is not entitled to benefits.

*Affirmed in part,*
*reversed in part.*

Koontz, C.J., and Barrow, J., concurred.