631 So.2d 201 (1994)
HARDIN'S BAKERY and Pacific Employers Insurance Company
v.
Louis G. TAYLOR.
No. 91-CC-0246.
Supreme Court of Mississippi.
January 27, 1994.
*202 Ronald L. Roberts, Mitchell McNutt Threadgill Smith & Sams, Columbus, for appellant.
Hal H.H. McClanahan, Lipscomb Geeslin & McClanahan, Columbus, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:

FACTS AND PROCEDURAL HISTORY
Louis G. Taylor (hereinafter "Taylor") was employed by Hardin's Bakery. Taylor worked in the shipping department and had been employed by Hardin's Bakery for approximately eighteen years. On June 29, 1986, Taylor, in an on-the-job accident, injured his back while unloading bread trays.
Prior to the June 29, 1986 on-the-job accident, Taylor injured his back in a non-work related incident in January 1983. As a result of that injury, Dr. William C. Sanders excised a ruptured disc at the L-5 level of Taylor's back. Dr. Sanders discharged Taylor on June 24, 1983. Taylor testified that he returned to work without restrictions and performed all aspects of his job which required lifting, bending, stooping, and carrying heavy loads.
Taylor returned to Dr. Sanders for the first time since his 1983 back surgery on April 14, 1986. At this visit Dr. Sanders noted that Taylor was experiencing nerve root irritation as a result of the first surgery and the pre-existing disc herniation. Because of Taylor's continuing back problems, Dr. Sanders put him on Tandearil, an anti-inflammatory drug, on April 14, 1986. Furthermore, because of this pre-existing back condition Taylor missed work from April 14, 1986 until April 22, 1986. Continuing to have further back problems, Taylor visited Dr. Sanders again on May 13, 1986 and May 28, 1986. Taylor again visited Dr. Sanders on June 16, 1986, complaining of back pain the first six to eight hours after waking up. All of these visits for medical treatment related to Taylor's pre-existing condition. However, with the exception of the work missed in April 1986, Taylor returned to work between these office visits and resumed full employment.
As stated earlier, Taylor was involved in an on-the-job accident on June 29, 1986 while unloading bread trays. Taylor was hospitalized by Dr. Sanders on July 2, 1986, and was discharged on August 5, 1986. Taylor was treated conservatively and no surgery was performed. Taylor reached maximum medical recovery on January 7, 1987, and was released by Dr. Sanders on that date. However, Taylor testified that he could lift only 25 pounds, couldn't sit long or drive long, and still took medication.
When Taylor attempted to return to work, he was told that Hardin's Columbus operation had been closed. However, Hardin's informed Taylor that there may be a position available for him in Meridian, Mississippi. Bobby L. Snyder, Hardin's personnel manager, testified that he informed Taylor of several job openings in Meridian, Mississippi. First, there was the position of truck loader which did involve some lifting, but paid $6.89 per hour (Taylor made $6.30 per hour in Columbus). Second, there was a packaging job which involved no lifting and paid a minimum of $5.75 per hour. Third, there was a job in the maintenance department that involved no heavy lifting and also paid a minimum of $5.75 per hour. Lastly, there were jobs in the production area which involved monitoring and regulating oven controls. These jobs also paid a minimum of $5.75 per hour. Snyder testified that Taylor stated he was not interested in these jobs. On cross-examination Snyder stated that no specific *203 job offer was made to Taylor. Taylor subsequently obtained a job with the Pinkerton Agency as a security guard earning $3.50 per hour. Taylor testified that he sought other employment but was only able to find employment with Pinkerton.
On February 23, 1989, Taylor pleaded guilty of touching a child for lustful purposes in the Circuit Court of Lowndes County. The judge sentenced Taylor to a term of eight years in the custody of the Mississippi Department of Corrections. Taylor testified that he had been incarcerated since July 7, 1988, and therefore did not know whether or not he was still employed with Pinkerton.
The deposition of Dr. William C. Sanders, an orthopedic surgeon in Columbus, Mississippi, was introduced into evidence. Dr. Sanders testified that Taylor was predisposed to having back problems related to his pre-existing back injury of 1983. He also stated that the pre-existing condition was a material contributing factor in the current disability. However, Dr. Sanders acknowledged that the first injury did not affect Taylor's ability to perform all of his duties as called for by his job. Following the work-related injury in 1986, Taylor could not do the work that he was required to do at Hardin's. On January 7, 1987 Dr. Sanders released Taylor as having reached maximum medical improvement. Dr. Sanders assigned Taylor a twenty percent (20%) overall permanent partial disability to the body as a whole, with ten percent (10%) pre-existing as a result of the 1983 surgery.
Dr. Moses C. Jones, Jr., a neurosurgeon in Tuscaloosa, Alabama, also examined Taylor following the work-related accident in June 1986. Dr. Jones' deposition was introduced into evidence. He stated that he saw Taylor on February 19, 1987, and after performing an examination assigned to claimant a ten (10%) percent permanent partial disability related to the 1983 surgery, but no disability as a result of the June 29, 1986, injury. Dr. Jones further stated that he thought Taylor was basically recovered from whatever had happened to him on June 29, 1986, and that he could find no evidence of any disability from the examination other than the 1983 episode.
This case was first heard by Administrative Law Judge Tulane E. Posey, Jr. The Administrative Law Judge determined that Taylor: (1) was temporarily and totally disabled from June 29, 1986, to January 7, 1987, as the direct result of his accidental injury; (2) had a loss of wage earning capacity of $26.75 as a result of a 10% permanent partial disability arising out of the June 29, 1986, accident; (3) that he had a 10% permanent partial disability resulting from the previous injury of January, 1983, but that condition was not a material contributing factor in the injury of June 29, 1986; and (4) was placed in jail on July 7, 1988, as a result of a criminal charge, and therefore was not available to work or seek employment in the open job market.
The Administrative Judge ordered that Hardin's Bakery, and its carrier, Pacific Employers Insurance Company, pay compensation benefits as follows: (1) pay for, furnish and provide Taylor all reasonable and necessary medical expenses incurred due to his injury of June 29, 1986; (2) pay to Taylor temporary total disability benefits at a rate of $133.00 per week from June 29, 1986 until January 7, 1987; (3) pay to Taylor permanent partial benefits at a rate of $25.00 per week from January 7, 1987, until Taylor was incarcerated on or about July 7, 1988. In other words, Taylor's benefits ceased on the date of incarceration.
Taylor filed a petition to review the findings of the Administrative Judge and Hardin's Bakery filed a cross-petition for review of the decision by the Full Commission. On appeal the Full Commission affirmed in part and reversed in part and held that:
(1) the Employer and Carrier were to furnish and provide to Taylor all reasonable and necessary medical expenses and supplies incurred due to his injury on June 29, 1986, for such period as the nature of his injury or the process of his recovery may require;
(2) the Employer and Carrier pay the Claimant temporary total disability benefits at the regular $133.00 per week from June 29, 1986, until January 7, 1987, with proper credit of time the Claimant worked during this period;
*204 (3) since Taylor did in fact perform the substantial acts of his employment following the 1983 injury until the disabling injury of June 29, 1986, that apportionment under the authority of Stuarts, Inc. v. Brown, 543 So.2d 649 (Miss. 1989), did not apply, thus amending the Order of the Administrative Judge to reflect that Taylor sustained twenty percent (20%) permanent partial disability of his body as a whole;
(4) Taylor was entitled to $85.01 per week for permanent partial disability benefits from his date of maximum medical recovery on January 7, 1987, continued for 450 weeks with proper credit being given for any such payment already made;
(5) Taylor was entitled to receive the permanent partial disability benefits while incarcerated, since there was no statutory or regulatory authority by which the Mississippi Workers' Compensation Commission could deny such benefits.
From this Order of the Commission of September 25, 1990, the Employer/Carrier perfected an appeal to the Circuit Court of Lowndes County, Mississippi. On February 15, 1991, the Circuit Court of Lowndes County affirmed the decision of the Commission in all respects. Subsequently the Employer/Carrier perfected an appeal to this Court by Notice of Appeal dated March 12, 1991.

ASSIGNMENT OF ERRORS
Hardin's Bakery and Pacific Employers Insurance Company assert that the Full Commission's decision was not supported by substantial evidence and therefore the Circuit Court erred in affirming the decision. The Employer/Carrier assign the following as errors:
I.(A).
WHETHER THE FULL COMMISSION ERRED IN DETERMINING THAT TAYLOR SUFFERED A PERMANENT PARTIAL DISABILITY AND RESULTING LOSS OF WAGE EARNING CAPACITY AS A RESULT OF THE WORK-RELATED INJURY.
I.(B).
ASSUMING, ARGUENDO, TAYLOR SUFFERED ANY DISABILITY WHATSOEVER ARISING OUT OF THE ACCIDENT OF JUNE 29, 1986, WHETHER THE FULL COMMISSION ERRED IN FAILING TO APPORTION THE CLAIMANT'S RECOVERY BASED ON THE 1983 INJURY.
II. WHETHER THE FULL COMMISSION ERRED IN FINDING THAT THE CLAIMANT WAS ENTITLED TO RECEIVE PERMANENT PARTIAL DISABILITY BENEFITS WHILE INCARCERATED.

DISCUSSION OF LAW

Standard of Review
This Court recently stated its standard of review of appeals from the Workers' Compensation Commission:
This Court reviews the decision of the Workers' Compensation Commission within a limited scope, as it considers only whether there is substantial evidence to support the findings of the Workers' Compensation Commission. The findings of the Commission will be reversed by an appellate court only if the findings are clearly erroneous and contrary to the overwhelming weight of the evidence. Morris v. Lansdell's Frame Co., 547 So.2d 782, 784 (Miss. 1989), quoting Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); compare Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985). If the findings are supported by substantial evidence, then they are beyond the power of this Court to disturb.
Ray v. Mississippi State Bd. of Health, 598 So.2d 760, 764 (Miss. 1992). This Court also stated the following:
We do not sit as triers of facts; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of fact; rather, our function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission. If there be such substantial credible evidence, we are without authority to disturb that which the Commission has found, even *205 though that evidence would not be sufficient to convince us were we the factfinders.
South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 589-90 (Miss. 1985).

DISCUSSION

I.

A. DID THE CIRCUIT COURT ERR IN AFFIRMING THE FULL COMMISSION'S DETERMINATION THAT TAYLOR SUFFERED A PERMANENT PARTIAL DISABILITY AND RESULTING LOSS OF WAGE EARNING CAPACITY AS A RESULT OF THE WORK-RELATED INJURY?
It is undisputed that Taylor incurred a work-related injury to his back on June 29, 1986. It is also undisputed that Taylor had a pre-existing back injury that occurred in January 1983. However, the Employer/Carrier argued that Taylor's loss of wage earning capacity, if any, was attributable only to his pre-existing back injury of January 1983. In support of the argument, the Employer/Carrier relied solely on Dr. Jones' testimony. Dr. Jones testified that Taylor had a 10% permanent partial disability. However, Dr. Jones stated that none of the 10% impairment that he assigned to Taylor was a result of the June 29, 1986 work-related accident. Rather, Dr. Jones thought the 10% disability was the sole result of the laminectomy performed on Taylor in January 1983. The Employer/Carrier failed to explain the percentage impairment assigned by Dr. Sanders.
Taylor argued that his loss of wage earning capacity was not attributable to the previous back injury of January 1983, but was directly attributable only to the work-related injury of June 29, 1986. Dr. Sanders assigned Taylor a 20% overall permanent partial disability to the body as a whole. Ten percent (10%) of the permanent partial disability was a result of the 1983 back injury and 10% was a result of the work-related injury that occurred on June 29, 1986. Dr. Sanders testified that despite the previous injury of 1983, with its resulting 10% impairment, Taylor had been able to substantially perform all of his occupational duties at Hardin's Bakery.
The Full Commission, in determining whether Taylor sustained any permanent disability from the June 29, 1986 accident, stated that "the medical testimony presented by Dr. William C. Sanders, clearly indicates that claimant, as a result of said injury of June 29, 1986, in conjunction with his injury of 1983, now has a twenty (20) percent overall permanent partial disability to the body as a whole."
Dr. Sanders treated Taylor over a three-year period and was familiar with his entire medical history. He had the opportunity to compare the actual discrepancies existing from January 1983 through June 1986. Dr. Jones did not have this opportunity. He examined the patient once. Based upon this Court's standard of review, the Full Commission's determination that Taylor sustained a permanent partial disability is affirmed.

B. DID THE FULL COMMISSION ERR IN FAILING TO APPORTION TAYLOR'S RECOVERY BASED ON THE 1983 INJURY?
This Court stated in Stuart's, Inc. v. Brown, 543 So.2d 649, 654 (Miss. 1989), that only pre-existing occupational disabilities generate a duty to apportion. The Court further stated that "a preexisting physical handicap, disease or lesion which did not impair wage earning capacity ex ante by definition cannot be that which impairs wage earning capacity ex post." In Brown, the Court further stated:
After reviewing the language of Section 71-3-7 and the principles imbedded within our Workers Compensation Act, and as well, nearly all of the previous Mississippi cases relating to apportionment, we find the following as the best and most coherent-though far from perfect-reading our law may be given. In work-connected injury cases where the evidence establishes (a) successive injuries experienced by the employee where following the first injury the employee engages in full-time employment for a substantial period of time prior to the second injury; or (b) a preexisting (symptomatic or asymptomatic) condition *206 which causes the employee to experience no pre-injury occupational disability, apportionment may not be ordered.
Brown, 543 So.2d at 655.
The Full Commission stated that it appeared from the record that claimant did in fact perform the substantial acts of his employment following the 1983 injury until the disabling injury of June 29, 1986. Therefore, the Commission found that pursuant to Brown, apportionment did not apply. The Commission further amended the "Order of Administrative Judge" of May 1, 1989, to reflect that Taylor sustained a twenty percent (20%) permanent partial disability to the body as a whole as a result of his June 29, 1986, injury.
The Employer/Carrier argued that any disability benefits due Taylor should have been apportioned based on the pre-existing back condition of January, 1983. In so arguing, Employer/Carrier asserted that Taylor's condition did not fall within the above stated rule set forth in Brown, but fell within pre-existing conditions excepted from the rule. The Court in Brown (in referring to the above quoted passage from Brown) stated:
On the other hand, in cases where (1) there is evidence of a medically cognizable, identifiable, symptomatic condition which antedated the injury; and (2) the employee experienced some absence of normal (for him or her) wage earning capacity, then apportionment must be ordered.
Brown, 543 So.2d at 655.
The Employer/Carrier argued that there was sufficient proof in the record that Taylor experienced a substantial occupational or functional disability that arose from the 1983 injury. In support of the argument, the Employer/Carrier stated that prior to the work-related injury, Taylor was forced to seek medical attention and missed several days of work because of his 1983 pre-existing back condition. Therefore, under Brown, Taylor was occupationally or functionally disabled and apportionment was proper.
The Employer/Carrier's argument does not apply the Brown rule on apportionment correctly and is without merit. In Brown, the Court uses occupational disability synonymously with loss of wage earning capacity. Brown, 543 So.2d at 655. In order to determine a worker's occupational disability one must compare the worker's pre-injury wage earning capacity with the post-injury wage earning capacity. Id. Although Taylor had a pre-existing back condition that dated back to 1983, the record revealed that this back condition did not functionally impair or stop Taylor from doing his work from 1983 to June 29, 1986. It was admitted that Taylor sought medical attention in the two-month interim prior to June 29, 1986. However, Taylor returned to his employment doing substantially what he had done since 1983. It was not until after June 29, 1986, that Taylor stated that he was functionally, occupationally disabled to do what he had previously done. In other words, Taylor's wage earning capacity decreased after the work-related injury.
The Full Commission considered the conflicting doctors' reports and other evidence in the record. Based upon the record there appears to be no credible evidence to show that the Commission was clearly erroneous in its holding, or that the ruling was arbitrary or capricious or any other credible basis for reversal of the decision exists. Therefore, the Full Commission's decision not to apportion benefits is affirmed.

II.

DID THE FULL COMMISSION ERR IN FINDING THAT TAYLOR'S SUBSEQUENT INCARCERATION DID NOT PRECLUDE HIM FROM RECEIVING PERMANENT PARTIAL DISABILITY BENEFITS?
In Smith v. Jackson Const. Co., 607 So.2d 1119 (Miss. 1992), this Court stated:
If there is substantial evidence to support the Commission, absent an error of law, this Court must affirm. On the other hand, where the Commission has misapprehended the controlling legal principles, we will reverse, for our review in that event is de novo.

Smith, 607 So.2d at 1125.

1.
The issue this assignment of error raises is whether imprisonment of a person *207 already receiving permanent partial worker's compensation disability payments cuts off the employer's duty to make payments during the period of confinement. This is an issue of first impression in Mississippi. The Workers' Compensation Act is silent as to what happens when a claimant who is entitled to permanent disability benefits is subsequently incarcerated.
In the Commission's opinion on this issue, they stated that it was well settled that the Mississippi Workers' Compensation Commission was a creature of statute and only had the power to do those things specifically set forth within the statutes. See, Strong v. Bostick, 420 So.2d 1356, 1361 (Miss. 1982). With this we agree.
Since this is a case of first impression in this State, we must look to other jurisdictions with Acts similar to ours to decide whether incarceration prevents a claimant from receiving permanent disability benefits. There appears to be a split in authority, with a majority of the courts holding that incarceration after conviction of a crime does not terminate or suspend benefits.[1]
One such case (and one that the Commission relied upon in deciding the issue) is Crawford v. Midwest Steel Company, Inc., 517 So.2d 918 (La. Ct. App. 1987). In Crawford, the claimant was injured on the job and was subsequently incarcerated prior to the hearing before the Administrative Judge. The Court in Crawford held as follows:
Ultimately, we are of the opinion that the authority to suspend or forfeit an injured worker's entitlement to worker's compensation benefits must be expressly provided by statute or, at the very least, necessarily implied from a reading of the statute as a whole... . A reading of the Act, as effective on February 23, 1983, establishes that recovery is founded upon a diminution or loss of earning capacity. Compensation benefits are not paid in lieu of loss [sic] wages... . Although it may be argued that one confined to prison has, for the duration of his confinement, no earning capacity, we believe that this is an issue the resolution of which is more appropriately left to the legislature. Tullier v. Tullier, 464 So.2d 278 (La. 1985); La.Civ. Code art. 1 (1870). We find no authority in the Act for the proposition that an incarcerated injured worker's benefits may be suspended or forfeited during the period of confinement.
Crawford, 517 So.2d at 924.
The Commission also relied on United Riggers Erectors v. Industrial Comm'n, 131 Ariz. 258, 640 P.2d 189 (1982) in reaching their decision. In United Riggers, claimant sustained an accidental injury which was admitted to be compensable by the carrier and benefits were paid until the carrier issued a notice terminating benefits with a permanent partial disability of 15%. Id. at 259, 640 P.2d at 190. Thereafter, claimant pled guilty to mail fraud and was sentenced to three years in a federal penitentiary. Id.
One of the issues addressed by the court was whether a claimant's incarceration constituted a voluntary removal from the job market, thereby precluding him from receiving permanent partial disability benefits. Id. The court held that there was no provision in the Arizona workmen compensation statutes that expressly prohibited payment of disability benefits during periods when the claimant was incarcerated. Id. at 260, 640 P.2d at 191. The court also found it noteworthy that the claimant was only claiming disability benefits based upon what he proved he would have been able to earn had he not been incarcerated. Id. at 261, 640 P.2d at 192. The court held that Arizona law did not preclude claimant from receiving permanent partial disability benefits by virtue of his incarceration and that it was not the court's function to question the wisdom of the legislative scheme, but to interpret and apply the statutes as they were enacted. Id.

2.
There are cases that terminate disability benefits upon conviction of a crime. For instance, in the New York case Packard v. Donald Sperry & Sons, 39 A.D.2d 622, 331 N.Y.S.2d 126 (1972), the claimant injured his back on November 21, 1967, while in the course of employment, when he fell from a *208 roof. Id. 331 N.Y.S.2d at 127. He was temporarily totally disabled until February of 1969 and permanently partially disabled thereafter. Id. However, the claimant was subsequently confined to jail for fighting with a policeman. Id. The New York court held that a claimant was not entitled to workmen's compensation benefits during a period of imprisonment on conviction of a crime. Id.
The New York court upheld the above stated rule in Bilello v. A.J. Eckert Co., 43 A.D.2d 192, 350 N.Y.S.2d 815 (1974). In Bilello, the court affirmed the board's decision that denied the claimant benefits during his period of imprisonment upon conviction of the crime of murder. However, the court concluded that the claimant was entitled to compensation up to the date of conviction unless the disability ceased to exist at some time prior thereto.[2] The Court stated that to deny a claimant benefits while incarcerated awaiting trial was an unfair situation, because it favored a defendant who was capable of posting bail over one who was unable to do so.
The Employer/Carrier also asserted that this Court should follow Baskerville v. Saunders Oil Co., Inc., 1 Va. App. 188, 336 S.E.2d 512 (1985). The facts of this case are distinguishable from the issue presented in the case sub judice. In that case, the court held that in the case of temporary partial incapacity, when a claimant's incarceration for a criminal act rather than his physical incapacity caused the claimant's loss of earning power, the employer was relieved from paying benefits during the period of incarceration. The court limited its decision to temporary partial disability and indicated that the result may not be the same under different circumstances.
Contrary to the position taken by the Full Commission, the Employer/Carrier argued that the Mississippi Workers' Compensation Act did provide statutory authority which would empower the Commission to deny benefits to a claimant who had been incarcerated. In support of this position, the Employer/Carrier cited the definition of disability as defined by the Mississippi Code. Miss. Code Ann. § 71-3-3(i) (1972) defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment which incapacity and the extent thereof must be supported by medical findings." (emphasis added). The Employer/Carrier stated that this definition provided direct authority which would enable the Commission to deny benefits to a claimant who has been incarcerated. Under the statute, they argued that Taylor suffered no "disability" since loss of wage earning capacity could not be calculated because he was incarcerated. Since Mississippi workers' compensation law bases recovery in permanent partial disability cases on loss of wage earning capacity, the employer/carrier argued that the calculation could not be made when the claimant took himself out of the labor market for a reason other than a work-related injury. Furthermore, the employer/carrier argued that Taylor did not suffer any "incapacity because of injury to earn wages" as set out in Miss. Code Ann. § 71-3-3(i) (1972) because Taylor's inability to earn wages was a direct result of his criminal acts and subsequent incarceration and not the result of his claimed injury.
Parker v. Union Camp Corp., 108 N.C. App. 85, 422 S.E.2d 585 (1992), lends some support to the Employer/Carrier's argument. In Parker, the claimant suffered work-related injuries in 1981 and 1982. Id. The carrier paid disability benefits to the claimant until 1986. The carrier stopped payment when claimant was convicted of a crime and sentenced to seven years in prison. Id. The Full Commission found that the claimant remained permanently and totally disabled throughout his incarceration, and that his inability to earn wages continued to be caused by his disability, not by his imprisonment. Id. 422 S.E.2d at 586. Based upon this determination the carrier appealed the decision.
The issue the court decided was whether imprisonment of a person already receiving worker's compensation disability payments cuts off the employer's duty to make payments *209 during the period of confinement. Id. at 586. The issue was one of first impression in North Carolina. Id. The court stated that although the North Carolina legislature had not dealt directly with the issue, existing statutes revealed legislative intent to deny prisoners worker's compensation benefits for the period of their confinement. Id. Thus, the court held that the claimant was not entitled to his disability payments for the period of his incarceration. Id.
The court in Parker decided the issue by applying statutes that exempted prisoners being worked by the state from the Workers' Compensation Act. There are no similar statutes in Mississippi. However, the court in Parker appeared to also base the holding by applying the definition of "disability" as defined by the Act. This is the argument made by the Employer/Carrier in the case sub judice. The court stated that to be entitled to worker's compensation benefits in North Carolina, an employee must prove that he or she is incapable of earning the same wages in the same or any other employment after the injury, and that the incapacity to earn was caused by the injury. North Carolina law defined "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury... ." (citations omitted). This definition is almost identical to Mississippi's. See Miss. Code Ann. § 71-3-3(i). The court stated that prior to imprisonment, the claimant's incapacity to earn wages was a result of his injury. However, while he was in prison the claimant did not have the right to earn wages and that his incapacity to earn was caused by his imprisonment, not by his injury. Therefore, the court held that the claimant did not meet the requirements for entitlement to workers' compensation benefits during that period. The dissenting judge in Parker argued that while in prison the claimant had the same physical incapacity to earn wages as he did out of prison and the fact of his incarceration should not deprive him and his dependents, if any, of the benefits to which he was legally entitled.
The majority in Parker stated that although they held that the claimant was not entitled to receive worker's compensation benefits while in prison, the court noted that the legislature might want to examine the possibility of continuing payment of benefits during a period of incarceration directly to a prisoner's dependents, who may have been relying on the disability payments as a major, or sole, source of income.[3]

3.
Since it was found that Taylor suffered a permanent partial disability as a result of his work-related injury, we must find that Taylor's subsequent incarceration did not preclude him from receiving those disability benefits. In the case sub judice, Taylor reached maximum medical recovery on January 7, 1987. Dr. Sanders stated that Taylor had a permanent partial disability of 20% to the body as a whole. After searching for another job, the only job that Taylor found was a job with Pinkerton as a security guard. He was paid an average weekly wage of $140.00. This is less than his pre-injury wage of $267.51. The disparity between these two figures provided the basis of the Full Commission awarding Taylor permanent partial disability benefits as a result of his loss of wage earning capacity. Taylor's loss of wage earning capacity had already been determined prior to the incarceration. Mississippi Statute Section 71-3-3(i) states that disability means "incapacity because of injury to earn wages ... at the time of injury... ." Further "wages" are defined in § 71-3-3(k) and states that wages are to be found at the "time of injury".
Section 71-3-31 provides that the "basis for compensation ... shall be ... wages earned by the employee at the time of injury." Taylor's permanent disability and wages had already been determined and presumably, he had been paid for his permanent partial disability for two years or more. If Taylor were still working, he would still have a post-injury reduction in wage earning capacity. Permanent disability benefits are *210 based upon claimant's loss of permanent capacity to earn. Further Section 71-3-43 provides:
No assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid; and such compensation and benefits shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may be waived.
This seems to be an intent to protect the benefits for the injured party and at least implies that any deviation from payment to the claimant must be done by legislative act.
While we recognize that we don't have the question before us, if Taylor were receiving temporary disability benefits, then it is likely that we would not hold the same.[4]
We affirm the Full Commission's finding that Taylor should continue to receive permanent partial disability benefits. We know that it seems unwise to require an employer to pay benefits to a person in jail, but if that is to be changed it must be done by the legislature.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS and McRAE, JJ., concur.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
SMITH, Justice, concurring in part, dissenting in part:
The majority is correct in its opinion concerning Taylor's suffering of a permanent partial disability and loss of wage earning capacity as a result of a work related injury. Additionally, the facts of this case warrant the majority's finding affirming the Full Commission's decision not to apportion benefits. It is the majority's holding that the imprisonment of Taylor did not cut off the employer's duty to continue to make disability payments during the period of confinement of Taylor that I find difficult to accept.
This is a case of first impression in Mississippi. The majority finds that the Worker's Compensation Act is silent as to what happens when a claimant who is entitled to permanent disability benefits is subsequently incarcerated. I do not totally agree. Although the statutory definition of "disability" is mentioned by the majority, they fail to take stock of its full importance. The majority maintains correctly that the administrative agency is powerless to act without authority within the law itself. However, authorities nationwide are divided about equally on the subject of whether inmates incarcerated for crimes may continue to draw their benefits. The better practice would be for the Mississippi legislature to address this issue promptly, and they are not impeded from doing so by this Court's opinion. I am hard pressed to believe that the intent of the Mississippi legislature is that persons who voluntarily commit crimes, resulting in subsequent incarceration in prison, should continue to draw workers' compensation benefits, because they have not removed themselves from the labor market.
It is my view that the Mississippi Workers' Compensation Act provides statutory authority empowering the Commission to deny benefits to a claimant who is incarcerated. Miss. Code Ann. § 71-3-3(i) (Supp. 1992) defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment which incapacity and the extent thereof must be supported by medical findings." This definition alone is sufficient authority to enable the Commission to deny benefits to Taylor. Under this statutory definition, Taylor suffered no "disability" since, because of his incarceration, loss of wage earning capacity cannot be calculated. In order to recover benefits under Mississippi Workers' Compensation law, loss of wage earning capacity must be established. Taylor has voluntarily taken himself out of the labor market for a reason other than a work *211 related injury and he should no longer be entitled to any compensation. Taylor has not suffered any "incapacity because of injury to earn wages," as set out by statute. Taylor's criminal act and subsequent incarceration, not his claimed injury, is the direct cause of his inability to earn wages.
The case of Parker v. Union Camp Corp., 108 N.C. App. 85, 422 S.E.2d 585 (1992), is a case on point for denial of benefits to a person who has committed a criminal act and is incarcerated. The issue was one of first impression in North Carolina also; the legislature had not dealt directly with the issue. That court based its holding on the definition of "disability" as defined by the North Carolina Workers' Compensation Act. As noted by the majority opinion, the North Carolina statute's definition of "disability" is almost identical to Mississippi's. The North Carolina court held that the claimant did not meet the requirements for entitlement to compensation benefits while in prison because he did not have the right to earn wages while in prison, and his incapacity to earn wages was caused by his voluntary criminal act resulting in imprisonment, not by his injury.
Packard v. Donald Sperry and Sons, 39 A.D.2d 622, 331 N.Y.S.2d 126 (1972), is another case involving the denial of benefits while the claimant was imprisoned. In Packard, the claimant injured his back in a fall from a roof and was permanently partially disabled. Subsequently, he was convicted for assault on a police officer and confined to prison. The New York court held the "claimant is not entitled to compensation during a period of imprisonment upon conviction of a crime." Id. 331 N.Y.S.2d at 126.
Taylor's case is based on permanent partial disability. Before he can recover he must establish loss of wage earning capacity due to injury. This is accomplished by making a comparison of pre-injury and post-injury wages. Any comparison is impossible because Taylor has taken himself out of the labor market by his voluntary criminal act and resulting incarceration. Hence, Taylor's inability to earn wages is not based upon a physical injury, but rather is based on his voluntary criminal act. Taylor should not be entitled to compensation benefits while in prison.
I respectfully dissent.
JAMES L. ROBERTS, Jr., J., joins this opinion.
NOTES
[1] See, 54 A.L.R.4th 241-253 for a full discussion of cases discussing the issue.
[2] See also, Howard v. Scott Housing Systems, Inc., 180 Ga. App. 690, 350 S.E.2d 27, aff'd 256 Ga. 675, 353 S.E.2d 2 (Ga. 1986) (recognizing this proposition).
[3] See Wood v. Beatrice Foods, 813 P.2d 821 (Colo.Ct.App. 1991), cert. denied (July 29, 1991) (court upheld statute suspending benefits to prisoners following conviction but allowing assignment of permanent disability payments to prisoner's spouse or minor children). If the legislature chooses to address this issue, it may want to consider looking at this statute.
[4] See Baskerville v. Saunders Oil Co., Inc., 1 Va. App. 188, 336 S.E.2d 512 (1985) (court denied temporary partial workers' compensation benefits to claimant who was subsequently incarcerated).