KING, J.,
for the Court:
¶ 1. Robert MeNeely, Jr. appeals from the decision of the Circuit Court of Claiborne County affirming the decision of the Workers’ Compensation Commission denying any permanent disability or loss of wage earning capacity as- a result of an on-the-job injury.
¶ 2. MeNeely raises the following issues on appeal:
1. The decision of the Workers’ Compensation Commission and the circuit court to deny benefits to Robert MeNeely is not supported by substantial evidence.
2; The Workers’ Compensation Commission and the circuit court erred as a matter of law in determining that the claimant suffered from a “pre-existing , condition”.
FACTS
¶ 3. On February 15, 1997, MeNeely was injured at his place of employment, Pickens Brothers Lumber Company. MeNeely, who has a degree in forestry, worked as a hardwood lumber grader. MeNeely was inspecting lumber when a board became caught under a chain, came loose, and struck him on the right side of his head, injuring his ear. MeNeely was treated by several physicians, was released to return to work, but never returned to work.
¶ 4. MeNeely admitted to being “an emotionally fragile, yet functional individual” who had been on prescription drugs for ten years for anxiety problems. MeNeely had problems with depression due to a recent divorce.
¶ 5. MeNeely testified that he blacked out and hallucinated on the way to the doctor. The two inch laceration to. his right ear was repaired by Dr. David Headley, a family practitioner in Port Gibson. Dr. Headley released MeNeely to return to work and anticipated a full recovery.
¶ 6. On March 5, 1997, MeNeely went to the emergency room at Humana Hospital in Natchez, complaining of problems with pain in the head and neck, ringing of the ears, numbness of the hands, legs, and remainder of his body. During his hospitalization at Humana, MeNeely was treated by Dr. David *510 Hall and Patricia Pintard, Phd. McNeely was discharged on March 7. Drs. Hall and Pin-tard recommended psychotherapy and more psychological testing, but McNeely was not interested, according to Dr. Hall.
¶ 7. The day after his discharge from Hu-mana, McNeely went back to Dr. Headley, who released him to return to work on March 11, 1991. Dr. Headley indicated that McNeely could return to normal work and that he had no'permanent disability resulting from his accident.
¶ 8. On March 13, McNeely again checked himself into the emergency room at Humana Hospital. Dr. Hall testified that “he had some erratic behavior and apparently to the point of building bon fires, carrying guns and stating that he felt electricity in his head.” McNeely was admitted with a provisional diagnosis of major depression. McNeely remained at Humana until March 15 when he was transferred to St. Dominic Hospital and placed under the care of Dr. Robert M. Ritter. McNeely remained there until March 22.
¶ 9. At Dr. Ritter’s request, Dr. Billy Fox, a clinical psychologist, conducted a psychological evaluation of McNeely. Dr. Fox’s findings were that McNeely suffered from somatization disorders, generalized anxiety disorder, and histrionic personality disorder and that McNeely had passive/aggressive traits.
¶ 10. Dr. Hanley E. Hasseltine, an ear, nose, and throat specialist, testified that he saw McNeely while he was at St. Dominic. His findings were that McNeely’s physical examination and hearing were normal. Dr. Hasseltine stated in his report that his findings indicated that McNeely was exaggerating the extent of his hearing loss or was likely malingering.
¶ 11. Dr. Ritter diagnosed McNeely as having hypochondriasis and passive-aggressive personality-passive dependant type. After an extensive evaluation of McNeely, Dr. Rit-ter found no reason for further hospitalization and released him.
¶ 12. A week later McNeely was readmitted to St. Dominic, intoxicated and suicidal. Dr. Ritter resumed treatment of McNeely, but on April 9, 1991, informed McNeely that he could find nothing to substantiate his complaints and requested that McNeely find himself another psychiatrist. Dr. Timothy Summers then took over the care of McNeely.
¶ 13. Dr. Summers requested Carlton Stanley, Phd., to conduct a psychological examination of McNeely. Dr. Stanley concluded that “[tjhere is an outside chance that [McNeely] does have some organic brain syndrome, but there is such a tendency to embellish his story, that I do not entirely trust any neuropsychological test results.” Dr. Summers continued to treat McNeely and finally discharged him on April 26, 1991, with outpatient follow-up.
¶ 14. On June 6,1991, Dr. Thomas Ingram, a neurologist, conducted an outpatient neurological examination of McNeely. Dr. Ingram again saw McNeely June 6,1991, October 26, 1992, and December 4, 1992. Dr. Ingram stated that “Mr. McNeely has been given a diagnosis of post concussion syndrome following his injury on February 15,1992; however, it is now apparent to me that Mr. McNeely had an anxiety disorder prior to his injury, making it difficult to separate all of his present symptom complex from preexisting problems.” Dr. Ingram concluded that McNeely reached maximum medical recovery on June 6,1991, prior to his first contact with McNeely.
¶ 15. Dr. Summers continued to treat McNeely, and on July 8, 1991, he was admitted to Charter Hospital at the direction of Dr. Summers. During his stay at Charter, McNeely was referred by Dr. Summer to James E. Stary, Phd., for general psychological evaluation. An assistant administered the four tests upon which Dr. Stary relied in forming his opinion. Dr. Stary did not see or interview McNeely. Dr. Stary’s report stated that “Mr. McNeely has a mixed type adjustment disorder, being depressed and having an exceptionally high level anxiety and having a high level of anger/resentment as well- Mr. McNeely is remarkably generally psychologically immature and this results in his having a major coping deficit so that he has difficulties dealing with problems of every day living, but especially his prob *511 lems in the inter personal sphere.” Dr. Stary noted that McNeely’s history of past employments ending many times in termination for his failure to comply with the rules or inability to perform job functions was consistent with the findings of a personality disorder. Dr. Stary testified that this personality disorder was something that McNeely developed as a child, not after the accident in question.
¶ 16. McNeely was discharged on August 2 for follow up on an outpatient basis by Dr. Summers. Dr. Summers testified that in his opinion McNeely suffered from post-concussion syndrome or brain injury.
DISCUSSION
WHETHER THE DECISION OF THE WORKERS’ COMPENSATION COMMISSION AND THE CIRCUIT COURT IS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 17. An appellate court has a limited scope of review of the decision of the Workers’ Compensation Commission, considering only whether there is substantial evidence to support the findings of the Commission. The findings of the Commission will be reversed only if the findings are clearly erroneous and contrary to the overwhelming weight of the evidence. Inman v. Coca-Cola/Dr. Pepper Bottling, 678 So.2d 992, 993 (Miss.1996). If the findings are supported by substantial evidence, then they are beyond the power of the Court to disturb. Hardin’s Bakery v. Taylor, 631 So.2d 201, 204 (Miss.1994). This is true even if the evidence would not be sufficient to convince us if we were the fact finder. Id. at 205.
¶ 18. The Commission affirmed the order of the administrative law judge, which contained the following:
While the claimant testified that he has various complaints and for the most his testimony indicates that he may be suffering from some type of psychological overlay resulting from his accident, which is corroborated by the testimony of Dr. Summers, I am of the opinion that the weight of the evidence does not substantiate this. Of the various doctors who testified in this cause or whose affidavits were presented into evidence, only Dr. Summers found claimant has a disabling problem that is connected to his employment. For the most part, those other physicians’ testimony indicates that claimant is exaggerating his problems and that any disabling mental problems he may have results from a preexisting personality disorder. Insofar as it relates to claimant’s mental problems,. I. am inclined to accept the findings of Dr. Ritter as being more accurate than those of Dr. Summers. Dr. Ritter’s findings are consistent with those of Dr. Stary and Dr. Fox which also indicate claimant is not suffering from a disabling mental problem, but instead from a developmental disorder which was not caused or aggravated by his industrial accident. I accept Dr. Ritter’s conclusion that claimant has a passive/aggressive personality and is otherwise faking his physical and mental problems.
¶ 19. Of the more than a dozen medical professionals who treated or tested McNeely, only Dr. Summer testified in support of McNeely. Only Dr. Summers testified as to a diagnosis of post-concussion syndrome or brain injury caused by the industrial accident. None of the other physicians or psychologists agreed with Dr. Summers’ diagnosis or his opinion as to causal connection.
¶ 20. The testimony of McNeely’s treating physicians supports the Commission’s findings. There was substantial evidence to support the finding that the claimant’s injury was not related to his mental problems.
WHETHER THE WORKERS’ COMPENSATION COMMISSION AND THE CIRCUIT COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE CLAIMANT SUFFERED FROM A “PRE-EXISTING CONDITION”.
¶ 21. Miss.Code Ann. § 71-3-7 (Rev.1995) provides, in relevant part:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
*512 ¶ 22. Although the factual findings mention that the testimony from various physicians that any disabling mental problems McNeely had were the result of a “preexisting mental disorder”, the decision of the Commission was based on a finding of a “developmental disorder which was not caused or aggravated by his industrial accident.” In other words, the Commission did not find that McNeely should be denied compensation based on a pre-existing condition but rather that McNeely’s continuing problems were not connected to his on-the-job injury. As stated in Stuart’s Inc. v. Brown, 543 So.2d 649, 650 (Miss.1989), “our legislature had decreed that the worker will bear that part of the burden of [his] loss of wage earning capacity as may be attributable to experiences or matters other than work connected injury.”
¶23. As found in the first assignment of error, the decision of the Commission is supported by substantial credible medical evidence. We affirm the decision of the Commission and the circuit court.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, and SOUTHWICK, JJ., concur.