COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick,[*] Judge Elder and
        Senior Judge Duff
Argued at Alexandria, Virginia


WLR FOODS, INC. and
 PACIFIC EMPLOYERS INSURANCE COMPANY
                                        OPINION BY
v.  Record No. 0536-97-4      CHIEF JUDGE JOHANNA L. FITZPATRICK
                                     DECEMBER 23, 1997
VILLABALDO CARDOSA


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Cathleen P. Welsh (Wharton, Aldhizer &
               Weaver, P.L.C., on brief), for appellants.

               No brief or argument for appellee.



     WLR Foods, Inc. and Pacific Employers Insurance Company
(collectively employer) appeal the Workers' Compensation
Commission's decision awarding benefits to Villabaldo Cardosa
(claimant).  Employer argues the commission erred in:  (1)
awarding benefits beyond the scope of claimant's request; (2)
awarding benefits for a time-barred claim; and (3) finding that
claimant's disability was causally related to his compensable
injury.  For the following reasons, we reverse the commission's
decision.

                                I.

     Villabaldo Cardosa is a fifty-three-year-old illiterate
Mexican man who has worked in this country for at least eight
years.  He began processing chickens for employer on January 16,

---

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

1994.  His job involved taking frozen chickens out of a box which contained twenty to twenty-five chickens, and placing the chickens on a cone.  On April 15, 1994, as claimant was removing chickens from a box, the side of the box collapsed and he fell forward.  Claimant broke his fall with his right arm and injured his right shoulder.  After his injury, claimant worked for employer in a light duty position for an undetermined time before returning to regular duty.  He last worked for employer November 30, 1994.

The evidence established that, on June 3, 1994, claimant saw Dr. G. Edward Chappell, Jr., an orthopedic surgeon.  Dr. Chappell recorded that claimant had no prior problems with his shoulder but had experienced pain since the accident.  He recommended occupational therapy, prescribed medication, and restricted all use of claimant's right arm at work.  Dr. Chappell indicated that "part of his problem" is adhesive capsulitis, or "frozen shoulder."  Dr. Chappell characterized adhesive capsulitis as "a disease of ordinary life unrelated to [claimant's] April, 1994 injury."  On October 7, Dr. Chappell noted no change in claimant's symptoms but more range of motion.  Dr. Chappell lifted the work restrictions.  On November 7, Dr. Chappell noted continuing symptoms but stated he did not think surgery would help the adhesive capsulitis.  Claimant did not return to Dr. Chappell.  Nonetheless, on December 30, 1994, Dr. Chappell imposed a lifting restriction of a maximum of five pounds with no

2

overhead use.

Without a referral from Dr. Chappell, claimant next sought medical treatment on May 23, 1995 from Dr. Robert Keeton, who declared claimant disabled "due to continuing shoulder problems." Dr. Keeton referred claimant to Dr. Creston Baumunk, another orthopedist. On July 5, Dr. Baumunk diagnosed claimant's condition as frozen shoulder probably secondary to impingement syndrome. On July 26, however, Dr. Baumunk indicated that the impingement syndrome was secondary to the frozen shoulder. On August 23, Dr. Baumunk observed that the long-term result of claimant's physical therapy "has been that he has regained some motion in the shoulder and this has been somewhat gratifying. At this point in time he continues, however, to have impingement-type syndrome." Dr. Baumunk offered three diagnoses: (1) right frozen shoulder, resolving slowly; (2) impingement syndrome, right shoulder; and (3) degenerative arthritis, right AC joint.

Through September and October 1995, claimant had several visits with Dr. Baumunk or his associate, Dr. Davis. After an office visit on November 1, Dr. Baumunk summarized the history:

> Mr. Cardoso [sic] returned today, this time with an English interpreter. He claims that he fell on his shoulder at work and had no problem prior to . . . this, and at that time he began to experience pain in the right shoulder area. He has been seen here for several months, [and] undergone four injections into the AC joint. He has had an arthrogram which shows no rotator cuff tear, and also has had subacromial injections. He has had physical therapy. He has also had

3

> multiple anti-inflammatories. He still has
> chronic pain and is unable to abduct above 90
> degrees without marked pain in the shoulder
> area.

Dr. Baumunk concluded that, based on a diagnosis of "impingement syndrome with degenerative AC joint," and the failure of conservative therapy, surgery was recommended. Dr. Baumunk performed the surgery on November 9, 1995.

Claimant's condition improved after surgery, and by January 22, 1996, he had almost full range of motion of his shoulder. On March 18, Dr. Baumunk noted an improved range of motion despite some neck spasm, and he imposed a permanent restriction against overhead work. Dr. Baumunk anticipated a release at the next visit.

On June 3, 1996, without a referral, claimant saw Dr. Charles Hubbard, an orthopedist. Dr. Hubbard diagnosed a partial thickness tear of the rotator cuff and AC joint degeneration, and he assigned a 19% impairment of the upper right extremity with work restrictions of no lifting over ten pounds and no overhead work. He stated, in response to claimant's counsel's questions, that, "[a]ccording to the records, the present disability is due to his 4/1/94 [sic] injury." Dr. Hubbard clarified, in response to employer's counsel, that he did not have access to Dr. Chappell's records and that arthritis of the AC joint and a subacromial bone spur contributed to claimant's impingement syndrome.

Claimant first filed a claim for benefits on March 3, 1995.

At an August 23, 1995 hearing, Deputy Commissioner Herring found that claimant had sustained a compensable injury by accident and that employer would "be responsible for medical care and treatment proximately related to the right shoulder contusion." However, based on Dr. Chappell's statements, the deputy commissioner also found that the employer's responsibility "shall not include any treatment for adhesive capsulitis." This opinion was not appealed and became final.

On February 14, 1996, claimant, by counsel, filed a change-in-condition application for benefits beginning February 1, 1996. Claimant never amended the application, either in writing or at the hearing, to expand the dates for coverage. At the June 5, 1996 hearing, claimant testified through an interpreter about his pre-injury and post-injury work. Claimant also described his efforts to market his remaining work capacity, which included applying for a job with employer on February 1, visiting an unspecified number of jobs in February, and inquiring at four or five plants between February and June.

Deputy Commissioner Mercer denied claimant's change-in-condition application, finding that claimant "does not suffer from a rotator cuff tear, and . . . that the diagnosis of frozen shoulder is not related to the accident." He also found that claimant failed to prove disability from his pre-injury work, reasonable efforts to market his residual work capacity, and a causal relationship between his disability and his

5

compensable injury. Claimant appealed to the full commission.

The commission reversed and awarded claimant temporary total disability benefits for the period October 25, 1995 through December 13, 1995, and from June 3, 1996 until circumstances require a modification. The commission found that Deputy Commissioner Herring's unappealed decision was res judicata, and employer was not responsible for treatment of claimant's adhesive capsulitis (frozen shoulder). However, "the record clearly reflects that the claimant suffers from more than one condition. In addition to adhesive capsulitis, the claimant has also been diagnosed with impingement syndrome caused by the fall at work." Although "the frozen shoulder resolved over time, the impingement syndrome worsened, necessitating surgery on November 9, 1995." The commission found that the two conditions are separate diagnoses and that "[t]reatment of and disability caused by the impingement syndrome are not barred by res judicata."

The commission found that Dr. Baumunk assessed claimant as totally disabled from October 25 to December 13, 1995, a time period predating that requested by claimant or addressed at the hearing. The commission further found that, "[b]ased on the uncontradicted opinion of Dr. Hubbard . . . the claimant was partially disabled and unable to perform his regular job as of June 3, 1996." The commission evaluated claimant's efforts to market his residual capacity and concluded that "for a non-English-speaking, illiterate manual laborer, age 53, with a

6

ten pound lifting restriction, and no rehabilitation assistance from the employer who has continually denied this claim, the marketing is reasonable."

II.

Employer first argues that the commission erred in awarding claimant benefits for October 25 to December 13, 1995, because claimant requested wage benefits only for the time period beginning February 1, 1996. Employer contends that the commission is not empowered to award benefits for time periods not requested in the application for a hearing or at the hearing itself and which the employer does not know it will be required to defend. We agree.

"Due process is flexible and calls for such procedural protections as the particular situation demands." Duncan v. ABF Freight System, Inc., 20 Va. App. 418, 422, 457 S.E.2d 424, 426 (1995) (citing Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). It is well settled that
> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Crystal City Oil Co. v. Dotson, 12 Va. App. 1014, 1018, 408 S.E.2d 252, 254 (1991) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)) (other citations omitted). "Pleading requirements in administrative proceedings before [the commission] are traditionally more informal than judicial proceedings." Sergio's Pizza v. Soncini, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986). However, the commission must use

8

procedures that "afford the parties minimal due process safeguards." Id.

Where the commission modifies a claim at the hearing or review stage without advising the employer in advance, "the dispositive issue . . . is whether the employer was prejudiced" by the lack of notice. Crystal City Oil Co., 12 Va. App. at 1018, 408 S.E.2d at 253-54 (amendment adding claim at change-in-condition hearing did not prejudice employer because "employer had sufficient notice reasonably calculated under the circumstances to advise it of the pending claim"). See Oak Hill Nursing Home, Inc. v. Back, 221 Va. 411, 270 S.E.2d 723 (1980) (consolidation with the original claim at the hearing stage gave the employer sufficient notice for the claim to be treated as a change of condition rather than an original application); Sergio's Pizza v. Soncini, 1 Va. App. 370, 339 S.E.2d 204 (1986) (procedure for treating benefits claim as change-in-condition claim at review stage did not provide employer a reasonable opportunity to present evidence or defend).

In the instant case, the commission essentially modified claimant's change-in-condition application at the decision stage, after both the hearing and the review proceedings were concluded.[1] Claimant's application requested benefits beginning

[1]The commission acknowledges that "[t]he claimant in this case is seeking temporary total disability benefits commencing February 1, 1996, and continuing." However, the opinion does not indicate whether the award of temporary total benefits for a time period before February 1, 1996 was deliberate or inadvertent. Either way, the analysis is the same.

9

February 1, 1996, and the application was never amended to encompass any greater time period. In his pleadings and at the hearing, claimant acknowledged that he was seeking benefits beginning February 1, 1996. The transcript of the hearing reflects a focus on claimant's condition and efforts to market his residual work capacity after February 1, 1996. Employer had no notice of a potential award of wage benefits concerning any earlier time period until the commission rendered its decision on January 31, 1997.

The commission's procedure "precluded an adequate opportunity to defend [against an award for this time period] since it was litigated only as [a claim for benefits beginning February 1, 1996]." Sergio's Pizza, 1 Va. App. at 376, 339 S.E.2d at 208. Although employer collected and presented medical evidence to support its causation defense, the evidence is ambiguous regarding claimant's degree and duration of disability from October through December 1995. Had employer been on notice that it would be required to defend against a claim for wage benefits during this time, it could have addressed this period in detail and obtained additional information. The commission's sua sponte award of unrequested benefits denied employer this opportunity and "fails to comport with due process notions of fair play and substantial justice." Id. at 377, 339 S.E.2d at 208. Therefore, the commission's award of temporary total disability benefits for the period from October 25 to December

10

13, 1995 is reversed.[2]

### III.

Employer next contends the commission's award of temporary total disability benefits beginning June 3, 1996 is barred by the statute of limitations. A claim for compensation must be filed with the commission within two years after the accident or the claim shall be forever barred. See Code § 65.2-601. A claimant who receives medical benefits but who fails to demonstrate disability during the two-year period may not be awarded total disability benefits. See Mayberry v. Alcoa Bldg. Prods., 18 Va. App. 18, 441 S.E.2d 349 (1994).

In the instant case, claimant's shoulder injury occurred on April 15, 1994, and he was not restricted from his pre-injury work until he saw Dr. Hubbard on June 3, 1996, more than twenty-four months later. We agree with Deputy Commissioner Mercer, who noted that "[a]ny claim for wage loss benefits first beginning in June 1996, when the lifting restriction was imposed by Dr. Hubbard, would also be jurisdictionally barred." Consequently, we reverse the commission's award of wage benefits beginning June 3, 1996.

---

[2]Employer also claims that the commission's award of benefits during this time period violates its own rule prohibiting awards of additional compensation more than ninety days before the filing of a change-in-condition application. See Rule 1.2(B). Because we reverse the award on alternative grounds, this argument is moot.

IV.

Lastly, employer argues the commission erred in finding that claimant's condition and disability were causally related to his compensable injury. Viewed in the light most favorable to the claimant, who prevailed before the commission, see Fairfax County v. Espinola, 11 Va. App. 126, 129, 396 S.E.2d 856, 858 (1990), the record reflects conflicting medical testimony from Dr. Chappell, Dr. Baumunk and Dr. Hubbard regarding the relationship between claimant's shoulder condition and his injury. Dr. Chappell concluded that "part of" claimant's shoulder problem was "adhesive capsulitis," (frozen shoulder), which is "a disease of ordinary life." Dr. Baumunk attributed claimant's "continuing shoulder problems" to both frozen shoulder and a second condition, "impingement syndrome." Dr. Hubbard opined that claimant's "present disability is due to his . . . injury."

"A question raised by conflicting medical opinion is a question of fact." Department of Corrections v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). "The fact that there is contrary evidence in the record is of no consequence." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). Credible evidence supports the commission's finding that although

12

employer is not responsible for claimant's frozen shoulder, "claimant suffers from more than one condition," and "[t]reatment of and disability caused by the impingement syndrome are not barred by res judicata." Dr. Baumunk's evidence supports the conclusion that "claimant's impingement syndrome was caused by his fall at work." Consequently, we affirm the commission's determination that a causal relationship exists between claimant's shoulder condition and his April 15, 1994 injury.[3]

V.

While claimant's award of wage benefits must be reversed as time-barred, his eligibility for medical benefits is still unresolved.

> Whether the employer is responsible for medical expenses . . . depends upon: (1) whether the medical service was causally related to the industrial injury; (2) whether such other medical attention was necessary; and (3) whether the treating physician made a referral.

Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199, 336 S.E.2d 903, 906 (1985). Employer defended claimant's request for medical benefits on the grounds that claimant had failed to establish causation and that claimant's treatment was unauthorized. We affirmed the commission's finding on causation, but the parties agreed at the June 5, 1996 hearing to reserve the issue of whether his treatment was properly authorized.

---

[3]Our resolution of the first two issues renders unnecessary a consideration of whether claimant reasonably marketed his residual work capacity.

13

Consequently, we remand for proceedings to determine whether employer is responsible for medical benefits.

<u>Reversed and remanded.</u>