COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Bray
Argued at Chesapeake, Virginia


NEWPORT NEWS SHIPBUILDING
 AND DRY DOCK COMPANY
                                 MEMORANDUM OPINION* BY
v.   Record No. 1716-99-1    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                    MARCH 21, 2000
QUEEN E. WIGGINS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Jonathan H. Walker (Mason, Cowardin & Mason,
          on brief), for appellant.

          (Gregory E. Camden; Montagna, Klein & Camden,
          on brief), for appellee.


     Newport News Shipbuilding and Dry Dock Company ("employer")

contends the Workers' Compensation Commission ("commission")

erred in awarding disability compensation benefits to Queen E.

Wiggins ("claimant").  On appeal, employer argues that the

commission erred in finding:  (1) that claimant was totally

disabled as a result of an "injury by accident" to her left

knee; and (2) that employer was required to offer claimant light

duty employment within her knee restrictions.  Because credible

evidence supports the commission's decision, we affirm.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

"On appeal, we view the evidence in the light most favorable to the claimant, who prevailed before the commission." Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citations omitted). "'A question raised by conflicting medical opinion is a question of fact.'" WLR Foods, Inc. v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting Dept. of Corrections v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986)). "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" Id. (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "'The fact that there is contrary evidence in the record is of no consequence.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

Claimant, a welder at the shipyard for over nineteen years, first reported complaints of pain and numbness in her hands on May 9, 1995 and was diagnosed by the shipyard's medical clinic as suffering from bilateral carpal tunnel syndrome. The following week, claimant suffered a fall while performing light duty work in the SPF shop and injured her left knee. The parties stipulated that claimant's left knee condition constituted an "injury by accident" and that her pre-existing bilateral carpal tunnel syndrome was not a compensable condition.

-

The medical evidence established that on May 17, 1995, Dr. Wayne Johnson, orthopedic surgeon, initially treated claimant's knee injury. He diagnosed a "traumatic prepatellar bursitis" and recommended conservative treatment. Dr. Johnson excused claimant from work through May 21, 1995 and returned her to light duty with restrictions of no bending, stooping, squatting or lifting greater than 25 pounds. On May 24, 1995, Dr. Johnson recommended additional work restrictions including no ladder climbing and minimum stair climbing through May 31, 1995. Claimant was discharged from further treatment of her knee and returned to regular duty without restrictions beginning June 1, 1995.

During the same period, Dr. Thomas Stiles, orthopedic surgeon, treated claimant's carpal tunnel syndrome and performed two carpal tunnel release surgeries on September 27, 1995, and January 10, 1996. In the course of treatment for her carpal tunnel syndrome, claimant also complained of continued problems with her left knee. Dr. Stiles ordered an MRI examination that revealed a "[questionable] tear of the lateral meniscus" and "patellar chondromalacia." Dr. Stiles ultimately recommended arthroscopy surgery, which was performed on November 7, 1996. He excused claimant from work beginning November 14, 1996 through January 9, 1997.

On February 2, 1997, Dr. Stiles issued permanent knee restrictions, including no lifting over 20 pounds,[1] no carrying weight more than 100 feet, no crawling, no vertical ladders and occasional kneeling and squatting. Claimant was also under permanent wrist restrictions beginning August 7, 1996, which included no vertical climbing, no crawling, no vibratory tool use, no overhead work and occasional kneeling.

Claimant testified that her duties as a welder included climbing ladders, crawling through holes and carrying a tool bag and welding line that weighed approximately 100 pounds. Claimant stated that when she was released to work with restrictions following her left knee injury, she asked employer for light duty work but none was available because of her hand restrictions. John Allen, claimant's supervisor, testified that claimant left work on September 25, 1995 for hand surgery and never returned. He admitted that the shipyard did not accommodate some of the hand restrictions, but it could have accommodated her knee restrictions.

The commission found that claimant's "bilateral carpal tunnel syndrome was preexisting and that work excuses related to this problem have no impact on the knee injury's effect on claimant's work ability." Because Dr. Stiles removed claimant

---

[1] While the commission noted that claimant was precluded from lifting more than "90 pounds," the work restriction form indicates, and the parties agree, that claimant was restricted from lifting more than "20 pounds."

-

from work following the knee surgery and ultimately recommended permanent work restrictions due to that injury, the commission found that claimant was entitled to disability compensation benefits.

## II.

Employer first contends that because claimant was under permanent hand restrictions for her non-compensable carpal tunnel syndrome, she did not sustain a wage earning capacity loss due to her knee injury.  However, the evidence supports the commission's conclusion that claimant was entitled to temporary total and permanent partial disability benefits.  The commission found:

> Dr. Stiles' work excuses clearly show that the left knee has disabled the claimant since the surgery.  While she still suffers from bilateral carpal tunnel syndrome, this does not negate the fact that her treating physician removed her from regular duties due to knee problems.  There is no evidence that the claimant's knee injury resolved by June 1, 1995.  The record shows that Dr. Stiles continued to treat the knee condition and relate[d] it to the compensable incident.  Regardless [whether] the claimant worked after the accident, the medical evidence reflects that her knee continued to bother her.  There is no evidence of another intervening accident or cause of the left knee problems.

Because credible medical evidence supports the commission's finding, it will be upheld on appeal.

Employer next contends that the commission erred in finding that it had a duty to offer claimant selective employment.

-

Employer argues that the commission failed to consider that claimant left her pre-injury employment on September 25, 1995 for hand surgery and never returned. Thus, employer concludes, the shipyard did not have a duty to offer selective employment to claimant within her knee restrictions.

The commission rejected employer's argument, stating the following:

> The claimant sought selective duty from the employer but was refused based on hand restrictions. There was no evidence that the employer offered her employment within her knee restrictions. The employer cannot argue that the claimant refused selective employment without a legitimate offer of such. She had permanent light-duty restrictions resulting from bilateral carpal tunnel syndrome. However, the claimant also received separately issued limitations based on the compensable knee condition and is entitled to benefits accordingly.

As the commission clearly explained, claimant sought selective duty within her knee restrictions, but was refused based upon her hand restrictions. Because selective employment was unavailable and credible evidence supports this finding, we affirm.

<u>Affirmed.</u>

-