COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia


GIANT FOOD LLC AND INDEMNITY INSURANCE
  COMPANY OF NORTH AMERICA
                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1393-12-4                      JUDGE ROSSIE D. ALSTON, JR.
                                                              MARCH 5, 2013
JULIET WU


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Brandi R. Howell (Franklin & Prokopik, P.C., on briefs), for
               appellants.

               Andrew S. Kasmer for appellee.


        Giant Food LLC (employer) appeals the commission's award of benefits to Juliet Wu

(claimant).  On appeal, employer contends that the commission erred in finding that claimant

sustained a compensable injury by accident on October 28, 2009, and in finding that the

claimant's left knee injury and disability from September 8, 2010, and continuing are causally

related to the occupational accident of October 28, 2009.  Finding no error, we affirm.

                                    I.  BACKGROUND[1]

        On appeal from the Workers' Compensation Commission, "we view the evidence in the

light most favorable to the party prevailing below," in this case, claimant.  Tomes v. James City

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002) (citing R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990)).

So viewed, the evidence shows that on October 28, 2009, claimant, a sixty-five-year-old woman employed as a cashier for employer, was bagging groceries when her manager asked her to take a break. Claimant took her purse and, on her way to the bathroom in the back of the store, the purse caught on a merchandise hook hanging from a shelf. As a result, claimant lost her balance and fell. Claimant was immediately taken to INOVA Fairfax Hospital.

At the hospital, claimant complained of pain in her left knee, arm, and shoulder. A medical examination found some effusion and restriction on the range of motion in her left knee. An x-ray of claimant's knee did not show any fractures or dislocation. A separate x-ray of claimant's arm also showed a fracture of claimant's left humerus.

On November 11, 2009, claimant had a follow-up appointment with Dr. Robert A. Hymes, who noted that claimant continued to complain of knee pain. Dr. Hymes provided claimant with a work status note recommending no use of her left arm and leg. On December 8, 2009, Dr. Hymes provided another work status note, this time stating that claimant had pain in her left knee and diagnosing claimant with a left humerus fracture. Consequently, Dr. Hymes restricted claimant to sit-down work only.

The next day, on December 9, 2009, Dr. Hymes again examined claimant and noted healing of her humerus fracture but also found a "limited active range of motion." On January 6, 2010, Dr. Hymes examined claimant and released her to work, providing claimant with a note stating that she had been diagnosed with a left distal radius fracture. The note also stated that Dr. Hymes was releasing claimant to full duty work beginning on January 25, 2010. Claimant did return to work in January 2010.

On January 26, 2010, claimant filed a claim for benefits. On March 9, 2010, claimant filed a second claim for benefits seeking a total wage loss benefit from November 7, 2009, to December 25, 2009, and December 26, 2009, to January 22, 2010. On July 29, 2010, claimant retained counsel and filed another claim for benefits requesting a lifetime award of medical benefits for her injuries.

In August 2010, Dr. Hymes referred claimant to Dr. M. Malek, and claimant began treatment with Dr. Malek at Washington Orthopaedic and Knee Clinic on September 8, 2010. Dr. Malek's initial evaluation noted that claimant was injured at work on October 28, 2009, and complained of pain in her left shoulder and left knee. The evaluation also noted that claimant continued to have "significant difficulty and inability to walk independently" and that she used a cane.

An x-ray of claimant's left knee revealed "an old fracture of the patella which has malunited." Dr. Malek further noted that he had reviewed claimant's x-rays from October 2009 and that he could "see the fracture[d] patella, which was present from the very beginning." Dr. Malek also examined and x-rayed claimant's left shoulder and recommended surgery on her shoulder to address her limited range of motion. As a result of his diagnoses, Dr. Malek provided claimant with a disability certificate recommending that she remain off work while undergoing diagnosis and therapy.

On September 22, 2010, claimant returned to see Dr. Malek, who opined that claimant's malunited left patella needed to be addressed by surgery. Dr. Malek recommended in a new disability certificate that claimant remain off work and noted that he was scheduling left knee surgery for claimant.

From October 2010 through December 2010, Dr. Malek continued to treat claimant and consistently opined that claimant's malunion of the patellar fracture needed to be surgically addressed and recommended that claimant remain off work. Dr. Malek noted that claimant's left knee would occasionally "give out on her" and that claimant was now using a walker at home, likely due to the malunion of the patella. On December 15, 2010, Dr. Malek again provided claimant with a disability certificate recommending she remain off work.

On January 5, 2011, Dr. Malek responded to a questionnaire from claimant's attorney regarding her injuries, in which he stated that he diagnosed claimant with "arthrofibrosis [of the] left shoulder" and "a [m]alunion patella" in the left knee. When asked whether the stated conditions were caused by the October 28, 2009 accident, Dr. Malek checked the box for "yes." When asked whether, in his opinion, claimant was restricted from working from at least September 8, 2010 to the present, Dr. Malek checked the box for "yes." Dr. Malek wrote that he recommended arthroscopic surgery for both the left shoulder and the left knee to relieve claimant's pain and increase her functioning. The letter also noted that the foregoing answers represented Dr. Malek's opinions were expressed by Dr. Malek to a reasonable medical probability.

The hearing before the deputy commissioner took place on January 24, 2011. Regarding the October 28, 2009 accident, claimant testified that "[o]n her way to the bathroom, [she passed] a shopping lane" in which "there was a customer [with] a shopping cart." Claimant further said that, because the cart was in the middle of the aisle and the customer was on the left of the cart, claimant passed on the right side of the cart. It was at this point that claimant's purse was "caught by the shelf, the hook on [the shelf]" and she fell. During cross-examination, claimant testified that the cart was empty and not moving.

On April 26, 2011, the deputy commissioner denied claimant's claim for benefits, finding that claimant's injury did not arise out of her employment. Claimant appealed to the commission. The commission subsequently reversed the deputy commissioner on November 7, 2011, and remanded the case to the deputy commissioner "for further consideration of the remaining issues and defenses." The commission found that claimant's injury arose out of her employment because a causal connection existed between claimant's workplace and her injuries, stating, "[S]ignificant to this case, [claimant's] employment placed her in the aisle and walking to the restroom. [Claimant] maneuvered around a cart and confronted a workplace hazard – the shelf hook."

On January 12, 2012, claimant underwent an independent medical examination with Dr. George Kartalian, Jr. Dr. Kartalian took bilateral knee x-rays and stated that "[n]o patella fracture was appreciated." Upon review of claimant's October 2009 x-rays, Dr. Kartalian said that they showed "irregularity of the patella" but that "no obvious fracture is seen[.]" There was, however, "a suggestion that there may be an injury or fracture" and the "lateral view also show[ed] a possible fracture line." Dr. Kartalian concluded, though, that any fracture would not be "an obvious finding."

Regarding claimant's knee injury, Dr. Kartalian ultimately opined that claimant had "healed from a patella fracture," her left knee pain was due to "degenerative changes," and "[it was] possible that [claimant] suffered a patella fracture from the injury of [October 28, 2009]." Dr. Kartalian continued that "[it was] not clear that an arthroscopic surgical procedure would benefit the left knee given the extensive degenerative changes and the symmetrical appearance and function of both of her knees," nor was it clear that "the injuries from 10/28/2010 [sic] are causing [claimant's] current inability to work." Dr. Kartalian did state that "Dr. Malek's

treatment [had] been reasonable, necessary, and causally related to the injuries of [October 28, 2009]."

On February 8, 2012, upon remand from the commission's November 7, 2011 determination, the deputy commissioner issued her opinion and found that claimant's left knee injury, treatment, and disability were causally related to the October 28, 2009 accident. The deputy commissioner relied upon Dr. Malek's opinion and the statement by Dr. Kartalian that the x-rays taken on October 28, 2009, showed "irregularities" and that the left knee injury was possibly related to the accident. The deputy commissioner entered an award for the claimant, including temporary total disability benefits from October 29, 2009 to November 11, 2009; December 6, 2009 to January 24, 2010; and September 8, 2010 and continuing. The deputy commissioner also awarded claimant medical benefits for as long as necessary for her left arm, shoulder, and knee.

Employer appealed to the commission, and the commission affirmed the deputy commissioner's February 8, 2012 opinion. This appeal followed.

## II. ANALYSIS

### A. Compensable Injury by Accident

On appeal, employer alleges that the commission erred in finding that claimant sustained a compensable injury by accident.[2]

---

[2] We note at the outset that we reject claimant's argument that employer waived this assignment of error by failing to appeal the commission's November 7, 2011 order holding that claimant sustained a compensable injury by accident and remanding the case to the deputy commissioner. The commission's November 7, 2011 order, which contained no award to claimant and specifically remanded the case to the deputy commissioner, was not a final award and so did not become binding when employer did not appeal the November 7, 2011 order within thirty days under Code § 65.2-706. See Jewell Ridge Coal Corp. v. Henderson, 229 Va. 266, 269, 392 S.E.2d 48, 50 (1985) (stating that the Court reviews only the final awards of the commission).

- 6 -

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001). On review to this Court, "'[d]ecisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002) (quoting WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997)).

For an injury to be compensable under the Virginia Workers' Compensation Act, the claimant must prove by a preponderance of the evidence that the injury "'[arose] out of and in the course of the employment.'" Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (*en banc*) (quoting Code § 65.2-101). "The phrase arising 'out of' refers to the origin or cause of the injury." Cnty. of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989).

Virginia adheres to the actual risk test to determine whether an injury arose "out of" the employment. Id. at 185, 376 S.E.2d at 75-76. An injury arises out of the employment when "'there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Hill, 17 Va. App. at 434, 437 S.E.2d at 729 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

> An injury does not arise out of the employment when it "cannot fairly be traced to the employment as a contributing proximate cause and . . . comes from a hazard to which the workmen would have been equally exposed apart from the employment. *The causative danger must be peculiar to the work and not common to the neighborhood*."

Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 63-64, 526 S.E.2d 295, 297 (2000) (quoting Bradshaw, 170 Va. at 335, 196 S.E. at 686 (emphasis added) (citation omitted)).

In this case, claimant fell because her purse was caught on a hook on the merchandise shelf in the grocery store aisle.[3] The commission found, as a matter of fact, that the hook on the merchandise shelf was a hazard peculiar to the workplace when it identified the hook as "a workplace hazard." On appeal, we cannot disturb this factual determination because it was supported by evidence in the record. See Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010) ("[W]e must defer to the commission's findings of fact if supported by credible evidence in the record.").

This case is distinguishable from Bernard v. Carlson Cos., 60 Va. App. 400, 728 S.E.2d 508 (2012), upon which employer relies. In Bernard, this Court held that the claimant's injury did not arise out of an actual risk of his employment because there was nothing hazardous, dangerous, unusual, or peculiar about the quesadilla the claimant was consuming when he was injured nor was the act of swallowing partially chewed food peculiar to his workplace. 60 Va. App. at 410, 728 S.E.2d at 513. In contrast, in this case, the commission was entitled to conclude that the hook, located on a grocery store merchandise shelf, was peculiar to claimant's workplace and not "common to the neighborhood." Bradshaw, 170 Va. at 335, 196 S.E. at 686. Accordingly, we find that the commission did not err in holding that claimant's injury arose out of her employment.

B. Causal Connection Between the Workplace Accident and Injury

Employer also argues on appeal the commission erred in holding that claimant's left knee injury and disability from September 8, 2010, and continuing are causally related to the work accident.

---

[3] Although there was some discussion by the parties on brief about the necessity of claimant's maneuvering around the shopping cart in the aisle and the possible contribution of this movement to claimant's injury, the shopping cart was not the focus of the commission's analysis, nor is it a focus of our determination on appeal.

Determination of causation is a factual finding. Thompson v. Brenco, Inc., 38 Va. App. 617, 622, 567 S.E.2d 580, 583 (2002). When reviewing workers' compensation cases, we defer to these factual findings. Code § 65.2-706(A); Hawks v. Henrico [Cnty.] Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408, 598 S.E.2d 750, 751 (2004). Moreover, the "question [of causation] raised by 'conflicting medical opinions' is one of fact." Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981) (quoting Johnson v. Capitol Hotel, 189 Va. 585, 590, 54 S.E.2d 106, 109 (1949)).

Employer's argument on appeal is essentially that Dr. Malek's and Dr. Kartalian's opinions conflict regarding whether claimant suffered a patellar fracture in the October 28, 2009 accident and that claimant's knee pain was caused by degeneration and arthritis, not the work accident. In finding that claimant's knee injury was caused by the October 28, 2009 work accident, the commission relied upon (1) claimant's immediate complaints of knee pain and irregularities revealed by the examination of claimant's knee after the accident; (2) "[t]he initial treating physicians' not[ing] of some type of acute knee injury"; (3) Dr. Malek's review of claimant's new and old x-rays and his opinion that claimant suffered from a patellar fracture resulting from the work-related fall that had not properly healed; and (4) Dr. Kartalian's agreement that "the original x-rays showed irregularities" and acknowledgment of "the possibility of a patellar fracture."

Thus, there is credible evidence in the record to support the commission's conclusion that claimant's knee injury and disability from September 8, 2010, was caused by the October 28, 2009 work accident. To the extent Dr. Kartalian's assessment of the cause of claimant's injury

- 9 -

conflicted with Dr. Malek's, the commission was entitled to credit Dr. Malek's opinion. <u>See</u> <u>Lucas</u>, 221 Va. at 790, 273 S.E.2d at 799. As a result, we hold that the commission did not err.

## III. CONCLUSION

For the above reasons, we find that the commission did not err in any respect identified by employer. Accordingly, the commission's opinion is affirmed.

<u>Affirmed.</u>