COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia

LOUDOUN COUNTY PUBLIC SCHOOLS

v.      Record No. 1298-23-4

CLAUDIA SANTI

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
DECEMBER 17, 2024

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

J. David Griffin (Old Dominion Law Group, P.C., on briefs),
for appellant.

Craig A. Brown (The Law Office of Craig A. Brown, PLLC,
on brief), for appellee.

Appellee Claudia Santi was injured in a workplace fall in early 2020. She filed a claim

for benefits with the Workers' Compensation Commission, which was denied. She then

requested a hearing, where her claim was again denied by a deputy commissioner. Santi

requested review by the full Commission. On review, the full Commission reversed and

remanded back to the deputy commissioner. After further proceedings, the Commission

ultimately entered a final order in favor of Santi. Santi's employer appeals to this Court.

Finding that Santi's injuries resulted from a non-compensable unexplained workplace fall, we

reverse.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

The accident giving rise to Santi's claim for workers' compensation benefits.

On the morning of February 13, 2020, Santi was employed as an instructional teaching assistant for Loudoun County Public Schools (the "School District" or "employer"), where she had worked for fourteen years. At the time of her accident, she was assigned to work at Buffalo Trail Elementary School. Between 9:15 and 9:20 a.m. on the morning of the accident, Santi was walking to the restroom, located in a hallway containing two water fountains (one of which was equipped to fill bottles), two restrooms, and a janitorial closet. Santi walked without difficulty about thirty steps from the classroom to the hallway where the restrooms were located. But as she turned to enter the hallway, her right foot slipped, and she fell forward. She later stated that the floor was "extremely slippery" and that it "felt like there was wax on the floor or some kind of thing." Explaining that she "just couldn't stop the fall," Santi testified that she continued in a forward motion, "sliding along," until she struck her head on a glass window 15 to 21 feet away at the end of the hallway. She "didn't notice [anything] wet" on the floor, only that it "definitely felt like wax," explaining that "I keep going back to wax, because I wasn't able to stop."

After colliding with the window, Santi's face struck the window ledge and she landed on her stomach, suffering scrapes, cuts, and swelling. Unable to move, she called out for help. School emergency personnel initially responded until they were relieved by paramedics, who transported Santi by ambulance to Stonesprings Hospital Center, where she was diagnosed with "a wrist fracture, a facial contusion, and a neck strain" as well as injuries to her elbows, shoulders, and knees. She later required surgery on her neck, hand, and wrist. Santi's treating physician authorized her to return to light-duty work on April 16, 2020, and released her to work

---

[1] "On appeal, we view the evidence in the light most favorable to the claimant, who prevailed before the commission." *VFP, Inc. v. Shepherd*, 39 Va. App. 289, 292 (2002) (quoting *Allen & Rocks, Inc. v. Briggs*, 28 Va. App. 662, 672 (1998)).

without restriction on May 11, 2020.  She continued to suffer from "chronic upper back pain," as well as decreased grip and occasional pain in the injured wrist.

<u>The deputy commissioner heard evidence and determined Santi's unexplained fall was not compensable.</u>

Santi filed a claim with the Workers' Compensation Commission for medical benefits and temporary total disability benefits from February 14, 2020, through May 10, 2020.  The School District "defend[ed] the claim on the grounds that there [wa]s no injury by accident arising out of the employment," that Santi had failed to market her residual ability to work, and the 90-day rule.[2]

The deputy commissioner heard evidence.  Santi testified that her right foot slipped as she turned to enter the hallway, before she reached the first restroom—which she agreed is located a "pretty short distance" from the hallway entrance—losing control of her forward movement and never regaining it before reaching the end of the hallway.  She testified that she tried to break her fall, although she could not recall taking any more steps, and that she "was just propelled like a bullet and hit the glass window."  Although she told the deputy commissioner that the floor felt like wax, which was "all [she] could think of at the time," she admitted that she had not seen anything on the floor.  She explained that fourth and fifth grade students would sometimes fill their water bottles at the drinking fountains in that hallway.  She added that, while the students may do so at any time, they most often would fill up their water bottles at the beginning and end of the school day and at breaks, two of which had occurred before her fall.  While she had seen water on the floor in the past, she conceded "that she did not see anything

---

[2] "Commission Rule 1:2(B) provides that 'additional compensation may not be awarded more than 90 days before the filing of the claim with the Commission.'"  *Henrico Pub. Utils. v. Taylor*, 34 Va. App. 233, 236 n.2 (2001).

wet or anything dropped on the floor" at the time of her accident nor did she recall either herself or her clothing being wet after the fall.

Buffalo Trail Elementary School head custodian Jermane Stelly testified for the School District. He explained that the hallway floor was covered with vinyl tiles "roughly about a foot" square in size. He testified that this floor had last been waxed and buffed in June 2019, eight to nine months before Santi's accident, and that he was unaware of any further waxing before Santi's fall. He explained that the school's floors are waxed and buffed every June and that this schedule had never varied during his nine years as head custodian. He testified that there were no defects in the floor where Santi fell and that any problems with the floor would have been brought to his attention. He further testified that he had heard no complaints about the floor being slippery, save Santi's accident. On cross-examination, Santi's counsel asked him whether he had ever received e-mails complaining about children leaving water on the floor when filling their bottles at the fountain, which he denied, but he admitted that the school had instructed him to place non-slip mats under the fountains in April or May of 2022, more than two years after Santi's accident.

The deputy commissioner denied Santi's claim for benefits, noting that "[t]here is no dispute that [Santi's] fall occurred in the course of her employment," thus the only question is "whether it *arose out of* her employment." (Emphasis added). Upon hearing and considering the evidence presented, the deputy commissioner found that Santi "slipped, but [that Santi] could not provide any specific explanation as to what caused her to slip, other than it felt like wax," having not "see[n] anything on the floor." And despite the "considerable testimony about the water fountains and the bottle filler," the deputy commissioner noted that Santi "did not see any water on the floor, her clothes were not wet, and she maintained she slipped well before she reached the area of the fountains which were located mid-way in the hall." The deputy commissioner

- 4 -

also considered Stelly's "credibl[e]" testimony "that there were no defects in the floor," that "they had not been waxed since the summer before the incident occurred in February," and that "there had been no complaints about the hallway being slippery." Accordingly, the deputy commissioner concluded that "there simply was no convincing evidence that any substance, defect or other condition of the floor had a causal role in the fall" and that Santi "did not produce sufficient evidence from which we can infer that a workplace condition caused the accident."

The deputy commissioner further stated in her order denying Santi's claim that "the accident d[id] not make sense" because "[Santi] did not fall backwards" when she slipped but instead "was propelled forward the length of the hallway"—which "[f]rom the photographs" in evidence "appear[ed] to be a distance of at least 20 feet"—despite Santi "not recall[ing] taking any steps after she slipped." "On this evidence, we simply cannot find a reasonable explanation for the claimant's accident," the deputy commissioner concluded, "and certainly not one arising out of a risk of her employment."

<u>A divided Commission that did not hear oral argument or take any evidence reverses and finds Santi's fall is compensable.</u>

The full Commission[3] reversed, rendering an opinion based on the record without oral argument.[4] Citing its own precedents, the full Commission stated that "[i]f an employee slips on a substance at work, then we have found that the employee has shown an environmental factor which is a risk of employment" and that "a claimant does not have to identify the precise

---

[3] The Commission issued a fractured opinion in which one commissioner wrote the lead opinion, another wrote a concurring opinion, and a third wrote a dissenting opinion. For clarity, we refer to these respectively as the opinion of the "full Commission" or the "Commission," the "concurring commissioner," and the "dissenting commissioner."

[4] The full Commission determined that "oral argument is unnecessary and would not be beneficial in this case." *See* Va. Workers' Comp. Rule 3.4*, Barnes v. Wise Fashions*, 16 Va. App. 108, 112 (1993).

substance that caused her to slip and fall."[5]  "Based on the greater weight of the evidence," the Commission continued, "we infer the claimant slipped on an unknown substance on the floor of the hallway.  A condition of her employment caused her to slip and fall.  Her injury arose out of her employment."  The Commission "recognize[d] there are inconsistencies with some of the [Santi]'s testimony," including that "[s]he indicated she slipped as soon as she turned into the hall where the restrooms are located," yet "denied she took any steps after she slipped," and that the distance she traveled after her slip "appear[ed] to be at least fifteen feet."  The Commission resolved these discrepancies by "reasonably infer[ring]," in its view, that "the claimant did not know where she was when her right foot slipped."  "On this record," the Commission concluded, "the discrepancy regarding precisely where the claimant fell does not change the compensability of her accident and injuries."

One commissioner entered a concurring opinion.  Also relying on the Commission's own precedents, the concurring commissioner noted that "[w]e have previously found similarly credible testimony of a slip sufficient to satisfy the 'arising out of' element," and he "agree[d] with the majority that there [wa]s sufficient evidence in the record to infer that the claimant slipped in water on the floor."

The third commissioner dissented, citing our opinion in *Hill v. Southern Tank Transport, Inc.*, 44 Va. App. 725, 732-33 (2005).  In the dissenting commissioner's view, there were no facts demonstrating how the accident occurred, and without such facts, Santi could not sustain her burden of proving a compensable injury.  *Id.* at 729 (explaining that the claimant has the burden to prove her claim by a preponderance of the evidence).  Reviewing the evidence, the dissenting commissioner noted that Santi did not take another step after she slipped, that "there is

---

[5] "[T]his Court is not bound by the commission's legal analysis in this or prior cases." *USAir, Inc. v. Joyce*, 27 Va. App. 184, 189 n.1 (1998).

no evidence of any water or moisture on the floor," that the floors had last been waxed months before Santi's accident, that Santi testified to "us[ing] this hall frequently before the accident without incident,'" and that "the school head custodian testified that there had been no complaints of the floor being slippery or slick and there were no defects in either the floor or the water fountains on the hall where the fall occurred." Citing *PYA/Monarch & Reliance Insurance Co. v. Harris*, 22 Va. App. 215, 221 (1996), the dissenting commissioner added that "[t]here is simply no evidence presented in this record to support the critical link between the condition of the hall and the injury that would allow me to find the injury qualifies as 'arising out of' the claimant's employment" and that "[t]he [d]eputy [c]ommissioner reasonably and appropriately found, after weighing the evidence, that the claimant failed to prove that the injury arose out of the employment."

Having reversed the deputy commissioner's "finding [that] the evidence failed to prove an injury by accident arising out of the employment," the Commission sent the case back "to the [d]eputy [c]ommissioner to address the additional claims and defenses." After further proceedings, the Commission entered its final order in favor of Santi.

The School District appeals, asserting in several overlapping assignments of error that the Commission "erred in its legal finding that the [c]laimant proved [Santi] sustained a compensable injury," relied on speculation and unreasonable inferences unsupported by the record to reach its conclusions, "err[oneously] ignor[ed] a witness credibility determination by the [d]eputy [c]ommissioner without" supporting facts, erroneously considered remedial efforts taken by the School District long after the accident, and "erred in finding a causal connection to the workplace to support the award."

ANALYSIS

I. <u>Non-fatal unexplained accidents are not compensable.</u>

We succinctly summarized the law governing compensability of injuries sustained from unexplained falls in *PYA/Monarch*, 22 Va. App. at 224 n.2. "In addressing the 'arising out of' requirement in unexplained accident cases, courts have adopted three approaches." *Id.* "[S]ome courts require the claimant to show a causal connection between the injury and his or her employment." *Id.* Other courts "allow an inference that the claimant's fall arose out of the employment if the claimant can show that no idiopathic condition caused the fall." *Id.* "Finally, the majority of courts use the positional risk doctrine to allow recovery in unexplained fall cases," holding that if the claimant "can establish that the injury occurred 'in the course of' . . . her employment, a presumption arises that the injury also 'arose out of' the employment." *Id.*

In *Pinkerton's, Inc. v. Helmes*, 242 Va. 378, 381 (1991), "the Virginia Supreme Court adopted the first approach and placed the burden on the claimant to show a causal connection between her accident and her employment." *PYA/Monarch*, 22 Va. App. at 224 n.2. In *Pinkerton's*, a security guard "was found semi-conscious in her wrecked vehicle which had run off the road [leading] from [her place of duty] to the public highway." 242 Va. at 379. Due to brain damage, she was "unable to recall any facts regarding the accident," although "tire marks on the roadway were consistent with a sudden steering maneuver." *Id.* The Commission "denied [her] claim for workers' compensation benefits finding that, while the accident occurred in the course of her employment, the evidence did not establish that the injuries were sustained as a result of any condition of employment." *Id.* On appeal to this Court, we reversed the Commission and held "that [the security guard] was entitled to a presumption that her injuries arose out of her employment because there was no evidence showing any non-employment related cause for the injuries and she was 'neurologically disabled and unable to recall the details of the accident.'" *Id.* But our Supreme

- 8 -

Court ultimately reversed this Court's decision and affirmed the Commission's denial of benefits, stating that "[t]o qualify for workers' compensation benefits, an employee's injuries must result from an event 'arising out of' and 'in the course of' the employment." *Id.* at 380.

"A 'critical link,' must exist between the conditions of the workplace and the injury in order for the injury to qualify as 'arising out of' the employment." *Id.* (quoting *County of Chesterfield v. Johnson*, 237 Va. 180, 186 (1989)). But "the cause of [the security guard's] accident [wa]s unknown." *Id.* "There [was] evidence that wild animals were sometimes seen on the mountain, but the reason for [the security guard's] sudden steering maneuver remain[ed] speculative." *Id.* "In the absence of a showing that the injuries 'arose out of' [her] employment," the Supreme Court concluded, the security guard's "claim for workers' compensation benefits must be denied." *Id.*

II. <u>Santi's fall is unexplained, so her injuries are not compensable.</u>

Santi's case differs from *Pinkerton's* in that Santi remembers her accident and can describe it, stating that she slipped on something that "felt like maybe wax" on the floor. But it is strikingly similar to another workplace fall case, *Central State Hospital v. Wiggers*, 230 Va. 157 (1985). In *Wiggers*, a clerk at Central State Hospital had arisen from her desk and walked about ten steps to answer a telephone. *Id.* at 158. "[J]ust before [she] went to grab for the phone, [her] . . . right ankle twisted," resulting in injury. *Id.* (first alteration in original). "She testified that there was no rug on the floor, that it was flat and level, and was free of water or other liquid." *Id.* Although the claimant was clear that "there wasn't any water on the floor" or any other liquid, she "presume[d]" the floor had been waxed the night before and that "[m]aybe it was slippery from that." *Id.* "There was no further evidence concerning the cause of [the claimant's] injury." *Id.* "The deputy commissioner held that the claimant's injury was 'idiopathic' and did not arise out of her employment," but the full Commission reversed, with one commissioner dissenting, "finding that [the claimant] 'turned her ankle while walking along a floor made slippery by an unknown substance." *Id.* The Supreme

Court reversed the full Commission, "[f]inding no evidence in the record to establish a causal connection between the claimant's work environment and her injury," observing that "[t]he claimant had the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that she suffered an injury by accident which arose out of and in the course of the employment." *Id.* at 158-60.

The facts in the present case are similar to *Wiggers*. As in *Wiggers*, Santi was walking on a non-defective floor in her place of employment and saw no foreign objects or substances on the floor. In both *Wiggers* and in the present case, the claimants lost their footing en route to their destinations, each either reporting a sensation like wax or inferring the presence of wax under their foot at the time of the fall. *Id.* at 158. In *Wiggers*, the claimant testified that "they had just waxed I presume the night before. Maybe it was slippery from that. It was something on the floor. I don't know what," *id.*, while in the present case, Santi testified that she "just slipped, um, I felt like there was wax on the floor or some kind of thing." Neither claimant presented any other evidence that wax, or any other substance, was *actually present* on the floor at the time either claimant fell. And in the present case, the school's head custodian testified that the floor had last been buffed and waxed eight or nine months before Santi's accident. Given the similarity between the present case and *Wiggers*, we conclude that *Wiggers* controls and that Santi has failed to demonstrate that the necessary "critical link" existed "between the conditions of the workplace and the injury . . . for the injury to qualify as 'arising out of' the employment." *Pinkerton's*, 242 Va. at 380. Since the present situation is materially indistinguishable from the claimant's position in *Wiggers*, Santi has failed to establish an entitlement to benefits. *See King William Cnty. v. Jones*, 66 Va. App. 531, 551 (2016).

III.  Factual findings that are unsupported by the record are not binding on appeal.

"Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." *VFP, Inc. v. Shepherd*, 39 Va. App. 289, 292 (2002) (quoting *WLR Foods v. Cardosa*, 26 Va. App. 220, 230 (1997)).  Likewise, "[w]here reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." *Id.* (quoting *Hawks v. Henrico Cnty. Sch. Bd.*, 7 Va. App. 398, 404 (1988)).  But "[w]hether an accidental injury arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal." *Hill*, 44 Va. App. at 730.  "[W]hile the Commission's construction of the Act is entitled to great weight on appeal, an award based upon surmise or conjecture must be set aside." *Waynesboro Sheriff's Dep't v. Harter*, 1 Va. App. 265, 268 (1985); *see also Fairfax Cty. Sch. Bd. v. Humphrey*, 41 Va. App. 147, 155 (2003) (same).  And "[w]hen the issue on appeal is a question of law, this Court is 'not bound by the commission's legal analysis in this or prior cases.'" *Jackson v. Ceres Marine Terminals, Inc.*, 64 Va. App. 459, 463 (2015) (quoting *Peacock v. Browning Ferris, Inc.*, 38 Va. App. 241, 248 (2002)).

The Commission opinion suggests that Santi slipped on water or liquid.  This conclusion ignored Santi's own testimony that the floor felt like wax when she slipped and that she did not detect any water or any other liquid present at that time.  Notably, the deputy commissioner found Stelly's testimony credible, where he noted that the floors had not been waxed in many months, pursuant to the school's normal practice, and he received no complaints about similar falls around the time of Santi's unexplained fall. [6]  Instead, the Commission emphasized the potential sources of

---

[6] We have never held "that a deputy commissioner's determination of a witness' credibility is binding, as a matter of law, upon the full commission," but we have held that "the finding may not be arbitrarily disregarded unless it is evident from the record that there existed some basis for the commission's different interpretation of the witness' credibility." *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 377 (1987).  "[W]hen the full commission does not

water in the hallway where Santi's injuries occurred, including two restrooms, a janitorial closet in the hallway, and a pair of drinking fountains (one of which "include[d] a nozzle for filling water bottles") where "[s]tudents were permitted to fill water bottles before school and during breaks between thirty-minute class segments," pointing out that two such breaks had occurred before Santi's fall.[7]

But no credible evidence supports the conclusion that Santi slipped on water or any other substance. To begin, Santi herself stated that she "turned to [her] right" to enter the hallway and "all of the sudden" she "slipped," thus locating the slip well before any of these potential water sources. Nonetheless, the Commission disregarded that testimony, finding that "[w]e reasonably [conclude] the claimant did not know where she was when her right foot slipped." By discounting Santi's testimony that she slipped *as she turned* to enter the hallway, the Commission erroneously facilitates the inference that she slipped *inside* the hallway, in the vicinity of the potential water sources located there.

Seeking to bridge the gap between the Commission's conclusions and the evidence in the record, the concurring commissioner observes that "[t]he severity of the claimant's injuries barred

_____

hear the witness' testimony, the deputy's observations about witness credibility become a part of the evidence which the commission may not arbitrarily ignore and dismiss." *Id.* at 383.

[7] Although the full Commission stopped short of stating *explicitly* that a wet floor caused Santi's fall, "infer[ring]" only that she "slipped on an unknown substance on the floor of the hallway," the concurring commissioner makes explicit what the full Commission only implies: "*I agree with the majority*," he writes,

> that there is sufficient evidence in the record *to infer that the claimant slipped in water on the floor.* In this short hallway, there were multiple sources from where the water could have come including two fountains used by students and teachers to fill up water bottles. In addition, there were the two bathrooms and a janitor's closet.

(Emphasis added).

- 12 -

her returning to the scene of the slip to confirm and identify the foreign substance that precipitated her fall" and that "if anyone on behalf of the employer conducted such an exam, they aren't talking." But nothing in the record supports a suggestion that the school did not seek to discover the source of the fall. Indeed, the head custodian testified in detail and the deputy commissioner—the only officer to hear evidence—expressly found him to be credible.

Here the concurring commissioner appeals to the well-worn aphorism—often attributed to the late astronomer Carl Sagan[8]—that the "absence of evidence is not evidence of absence," a trenchant restatement of the principle "that a premise is not necessarily true merely because it has yet to be proven false." *Tyree v. Boston Sci. Corp.*, 54 F. Supp. 3d 501, 583 (S.D. W. Va. 2014). But applying the principle in this way "misapprehend[s] the[] [claimant's] burden." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254 (D.C. Cir. 2013). "The burden of supplying evidence from which the inference can be legitimately drawn that the injury arose out of and in the course of the employment, rests upon the claimant," and the Commission cannot shift that burden to the employer. *Clifton v. Clifton Cable Contr., LLC*, 54 Va. App. 532, 539 (2009) (quoting *Butler v. Nolde Bros., Inc.*, 189 Va. 932, 944 (1949)).

"In this case, the record fails to identify the cause of the fall with the required specificity, and the commission may not speculate what substance, if any, caused claimant to fall." *Hardee's of Amherst v. Johnson*, No. 0873-97, slip op. at 4, 1999 Va. App. LEXIS 753, *6 (Dec. 16, 1997)[9]; *see also Johnson*, 237 Va. at 184-86 (holding that a twist-type injury incurred while turning on an ordinary staircase did not arise out of employment where claimant failed to show his work environment contributed to the injury). Here, Santi's speculative statement that she felt something

---

[8] *See, e.g.*, *People v. Austin*, 79 N.E.3d 312, 324 (Ill. App. Ct. 2017).

[9] Although "unpublished opinions are merely persuasive authority and not binding precedent," they may be cited as informative. *English v. Quinn*, 76 Va. App. 80, 89 n.8 (2022) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 172 (2017)).

like wax on the floor runs headlong into Stelly's "credible" evidence that the floors had not been waxed in months and Santi's own admission that she did not notice anything wet on the floor and did not recall her clothes being wet after the incident. "The record is devoid of evidence that anything on the floor caused [her] to slip, and it contains no indication that [she] was working in an unusual or awkward position or that she was engaged in unusual lifting or carrying activities." *Id.*

CONCLUSION

For the foregoing reasons, the Commission's judgment is reversed.[10]

*Reversed.*

---

[10] Concluding that the judgment below is unsupported by credible evidence and contrary to binding precedent, we need not reach the School District's other assignments of error.